### T. W. HOLLINGSWORTH v. S. R. MEXIA ET AL.

Delivered October 8, 1896.

**1. Trespass to Try Title—Judgment Properly Rendered Against Defendant's Warrantor.**

Where defendant in an action of trespass to try title brought in his warrantor, who defended as to the plaintiff by adopting his codefendant's pleas, the court properly rendered judgment upon the issues between the plaintiff and the warrantor.

**2. Warranty of Title—Remote Warrantor—Measure of Damages.**

A vendee of land may recover from a remote vendor on his warranty of title the amount which was paid to such vendor by his immediate vendee, though the vendee evicted paid less to his immediate vendor.

ERROR from Anderson. Tried below before Hon. A. B. WATKINS.

*McMeans & Gill*, for plaintiff in error.—The court erred in rendering judgment against Hollingsworth on his warranty in favor of Brunet for the sum of $1209, because the pleadings of Brunet and the judgment show that only 686 acres of the land conveyed by Carroll to Brunet was lost by Brunet in this suit, while Brunet only paid Carroll $1000 for 1692 acres, and the judgment in favor of Brunet should not have been for more than he paid for the land lost in this suit. Hall v. Pierson, 1 White & W. C. C., sec. 1210; Brown v. Hearon, 66 Texas, 63; Flynn v. Coal Co., 72 Iowa, 738; Nelson v. Matthews, 2 H. & M. (Va.), 164; 3 Am. Dec., 620.

*Thos. B. Greenwood & Son,* for defendants in error.

WILLIAMS, ASSOCIATE JUSTICE.—S. R. and E. A. Mexia, asserting title to eleven leagues of land situated in Anderson and Freestone Counties, granted to J. A. Aguilera, brought suit against J. C. Brunet to recover a portion of same claimed by him, lying in the former county. Brunet disclaimed as to all of the land sued for except two tracts, described by metes and bounds, containing, respectively, 500 and 536 acres, and as to these he pleaded limitation of three years. He also specially described in his answer two parcels of 175 acres each, out of the above mentioned tracts, and as to these he pleaded also limitation of five and ten years. He also impleaded plaintiff in error, Hollingsworth, alleging that on the 10th day of March, 1879, Hollingsworth conveyed to George G. Carroll, with general warranty of title, 2257 acres of land, including that herein claimed by defendant, for which Carroll paid Hollingsworth $5200; that on the 13th day of April, 1887, Carroll conveyed to him (the defendant), with general warranty of title, 1652 acres of the same land, for which defendant paid to Carroll $1000; and he prayed, that, in case of recovery by plaintiffs, he have judgment over against Hollingsworth on his warranty for his damages. Hollingsworth answered by general denial, plea of "not guilty," and adopted Brunet's pleas, so far as he might be required to defend against plaintiffs. He also pleaded specially that Brunet had himself sold the two tracts of 175 acres each, with covenants of warranty, and hence could not recover against him as to them.

The case was tried by the court without a jury, and a judgment was rendered in favor of plaintiffs against both Brunet and Hollingsworth for all of the land, except the two tracts of 175 acres each, which were adjudged to Brunet on his plea of limitation; and in favor of Brunet against Hollingsworth on his warranty for $1209 principal and $1088 interest, and for costs of suit. The judgment was, at the same term, corrected so as to disallow the interest which had been adjudged. From this judgment Hollingsworth prosecuted this writ of error.

There is no statement of facts, and the assignments of error are based entirely upon the pleadings and judgment, the contention being that, in the particulars pointed out, the latter is not in conformity with the former.

The first assignment of error, in substance, is that the pleadings of plaintiffs do not warrant a judgment in their favor against the warrantor brought in by the answer of defendant alone. Under article 4788, Sayles' Civil Statutes, we think the warrantor, when brought in and answering as this one did, is to be treated as a defendant, and that, as he may make all defenses as if he were one of the original defendants, it is not improper to render judgment determining the issue between him and the plaintiff. At any rate, it can work no injury to him, as he would, under such circumstances, be concluded by a judgment against the defendant.

The pleading of the defendant showed on its face that he had paid for the land to his immediate vendor, Carroll, a less sum than the latter had paid to plaintiff in error; and it is contended that, under these facts, the defendant could not recover of the plaintiff in error more than he had paid to Carroll. The question thus presented arises upon the pleadings, and, as the judgment appears to be for a larger amount than that for which plaintiff in error would, if this position is sound, be liable to defendant, a decision of the point becomes necessary.

Upon the question of law thus presented, as to the right of a plaintiff who has been evicted from land to recover of a remote warrantor of the title the sum received by such warrantor from his immediate grantee as the price of the land, though the plaintiff himself paid to his immediate grantor a less sum, there is an irreconcilable conflict among the decisions in other States. The following decisions hold that the recovery can be had of the full amount received by the original warrantor, regardless of what plaintiff himself had paid for the land. Brooks v. Black (Miss.), 8 So. Rep., 332; Lowrance v. Robertson, 10 S. C., 8; Mischke v. Baughn, 52 Iowa, 528; Dougherty v. Duvall, 9 B. Mon., 57; see, also, Hunt v. Orwig, 17 B. Mon., 73, and Cook v. Curtis (Mich.), 36 N. W. Rep., 692.

Other cases, cited below, hold to the contrary view, that the recovery is restricted to the amount paid by the plaintiff for the land which he has lost, on the ground that this is his damage. Williams v. Beeman, 2 Dev. (N. C.), 93; Mette v. Dow, 9 Lea (Tenn.), 93; Whitzman v. Hirsh, 87 Tenn., 513, 11 S. W. Rep., 421; Moore v. Frankenfield, 25 Minn., 540; Crisfield v. Storr, 36 Md., 129; Taylor v. Wallace (Colo.), 37 Pac. Rep., 963.

In Dickson v. Desire, 23 Mo., 151, the Supreme Court expresses an inclination to adopt the latter view, but makes no authoritative decision. The opinion in Wilson v. Taylor, 9 Ohio St., 595, seems to assume that this is the correct rule, though this is not made clear. We find in our reports a number of cases in which suits have been brought on covenants of warranty by remote vendees who had suffered eviction, in which the amount paid by the plaintiff to his vendor was all that was claimed and recovered; but in these cases the question before us was neither raised nor discussed. Eustis v. Fosdick, 88 Texas, 615; Flaniken v. Neal, 67 Texas, 629; Saunders v. Flaniken, 77 Texas, 662; Rogers v. Golson, 31 S. W. Rep., 200.

Others of the same character can be found, but we have not been able to discover in our reports any expression of the Supreme Court upon the question, unless it is in the case of Hall v. York, reported in 16 Texas, 18, and again in 22 Texas, 642. In that case York sold land to Cox, and executed his bond in the sum of $5000, obligating himself to make title. Cox sold the land and assigned the bond to Hall, who sued York to recover the penalty of the bond, alleging that York could not make title. On the first appeal it was held that the penalty of the bond could not be recovered, but that the measure of damages was the purchase

money paid with interest. After this Hall amended his petition, alleging the amount paid by himself to Cox, but not stating the amount paid by the latter to York. Exceptions were sustained to his petition, and from this his second appeal was prosecuted, and the judgment was affirmed, because of the omission to allege the consideration received by York; Justice Bell saying: "It is well settled by the case of Sutton v. Page, 4 Texas, 142, that, in a case like the present, where the vendor of land is not able to make title, the vendee's measure of damages is the purchase money and interest, and nothing more. In this case, John York's responsibility on his bond was fixed by the instrument itself and could not be affected by subsequent transactions between his vendee and other persons * * *. In this case, the petition did not allege what consideration passed to John York for the sale of the land to Cox * * *. The consideration that passed from Hall to Cox could not furnish the basis for computing the damages against York's estate."

By reference to the case of Sutton v. Page, which was held to furnish the measure of damages, it will be seen that the rule applicable to suits for breaches of covenants in deeds of conveyance was held to be also applicable to suits of the class to which that case, as well as Hall v. York, belonged. It cannot, therefore, be well said that the plaintiff in Hall v. York was placed upon the footing merely of an assignee of a chose in action, entitled to recover whatever his assignor could have recovered. In both cases the plaintiffs were purchasers of the land, and, if the purchase money had been paid, held the equitable title. Hence it was, probably, that the court regarded them as being governed by the same rule as governs a case of a covenantee suing for breach of warranty, and that no distinction was intended to be made between the case before the court, as an action for breach of contract to convey title, and one for breach of warranty. 2 Sutherland on Damages, p. 209, et seq.

It can, perhaps, be said that, in either view of the question before us, it would have been necessary for the plaintiff in Hall v. York to allege what Cox had paid to York, because, assuming that he could not recover more than he had paid to Cox, he could not recover so much, if he had paid more to Cox than Cox had paid to York; and that, therefore, the opinion in that case is consistent with either view. While the language used by the court seems to us to indicate the opinion that the remote vendee had the right to recover against the remote covenantor what the latter had received from his immediate vendee, unaffected by subsequent transactions, this is not so clear that we can consider that case as an authoritative decision of the present question. The only other reference to the point which we find in this State is in an opinion cited in the briefs by the Commission of Appeals in a case referred to it by the Court of Appeals. Hall v. Pierson, 1 White & W. C. C., 1210. The rule is there stated that the plaintiff can recover of his remote warrantor no more than he paid to his immediate vendor; but the statement is an obiter dictum and no authorities are cited, and,

besides, it was one of those decisions made in cases referred to the Commission by consent of parties, which are not binding as precedents.

Treating the question, then, as open in this State, we are of the opinion that the judgment rendered in this case is correct. The subject has been very fully discussed in the cases cited above, and perhaps it is unnecessary to do more than refer to them. But it seems to us that what we consider the error in the views of those courts holding that the plaintiff in such cases is limited in his recovery to the amount paid by him for the land, arises from an inattention to the true meaning of the rule which makes the purchase money and interest the measure of damages for breach of warranty, and to the course of reasoning through which it was established. At an early day the question as to the measure of damages, as between a covenantor and his immediate covenantee, for breach of warranty, arose, and received great attention. The cases of Staats v. Ten Eyck, 3 Caines, 112, and Pitcher v. Livingston, 4 Johns., 1, are the leading ones on the subject, in which the rule and the reasons upon which it is founded were carefully considered and stated, and have been adopted and followed in most of the States, including our own. Garrett v. Gaines, 6 Texas, 443; Turner v. Miller, 42 Texas, 420. The rule was mainly deduced from the history of the covenant which was substituted from the ancient common law warranty, the obligation under which was to restore to the party evicted other land worth as much as that which he had lost had been worth at the time of the warranty; and, instead of the land, it was held that, under the covenant of warranty, the warrantor should pay back its value at the time of the warranty as fixed by the price agreed upon between the parties at that time. The rule was fortified by the argument that it enabled both parties, at the time of their contract, to know the extent of the liability which might arise upon the covenant, and did not leave the vendor of land subject to unforeseen damages, which might result from the rapid appreciation of property or from costly and luxurious improvements which might be made by subsequent possessors. It is confessedly not based entirely upon the idea of compensation for the loss sustained by the person evicted, for it excludes a recovery for the value of the land at the time of eviction further than that may be compensated by restoration of the price received by the vendor. 3 Sedgwick on Damages, secs. 951, 957, 964.

Going behind the mere formula by which the rule is usually expressed, and looking at the reasoning upon which it was based, we find that it was adopted in order to fix and limit the liability incurred by the covenantor at the time of the conveyance, rather than to ascertain the extent of loss sustained by any covenantee at the time of eviction. That liability cannot be increased or diminished by any subsequent enhancement or depreciation in value of the land. Nor can it be increased by the contracts made between subsequent vendors and their vendees. Can it be diminished by the mere circumstance that the person evicted has paid to his vendor for the land protected by the covenant less than

the sum which the original covenantor received for the land and bound himself to restore in its place, if the title should fail? The courts, which so apply the rule as to make the price paid by the person evicted the measure of damages, treat it as if it were prescribed as the means of determining his actual loss. But this is not true. As pointed out in Lowrance v. Robertson, supra, what has been lost is the land itself, and the covenant as interpreted by the rule of damages referred to, is to restore in place of the land what the covenantor has received for it. The actual loss of the person evicted, the value of the land, may be more or less than this, but the liability of the warrantor is not varied by the fact. If the original purchaser retains the land, and is evicted after the land has greatly enhanced in value above the price paid for it, this does not increase his demand for damages; nor, on the other hand, would a depreciation to a value below the consideration paid diminish his claim. If he sells to another, who is evicted, the loss of the latter may be exactly the same as would have been the loss of his vendor had he retained the land. What reason can there be why he should recover more or less? By a conveyance of the land, it is agreed on all hands, the covenant passes to the purchaser, and his right of action upon it should be the same as that of his vendor, for his loss is exactly the same as that of the vendor would have been if he had been evicted under the same circumstances.

If A. sells to B. 1000 acres of land, and B. sells to C. one-half, retaining the other, the halves being of equal value, and both are evicted, it is evident that they have sustained equal loss. But, according to the contention, if C. has paid to B. less than half as much as B. paid to A., C. cannot recover on A.'s warranty as much as B. can recover; and, if C. has relied too much upon A.'s warranty and has taken none from B., he cannot recover the difference from the latter. Or, if B. should sell one-half to C., who pays one-half as much as B. paid to A., and the other half to D., who pays less, and both are evicted, it is again evident that they have lost property of equal value, and yet C. recovers more than D., and A. is made the beneficiary of D.'s better trading. Or, suppose the purchaser donates the land to a friend or relative. Can the donee when evicted recover on the warranty under which the donor held it? Evidently he can, unless it is true that the owner cannot give away his rights under the covenant as he may do with other property. If the donee can recover at all, he must, in those jurisdictions where purchase money and interest is the measure of damages, recover the whole of the consideration received by the remote warrantor, for there is no other basis. Why should he be in a better position than one who has paid for the land, but has paid less than the remote warrantor received. Still another supposable case illustrates the incorrectness of the rule contended for by plaintiff in error. A. conveys to B. land, for a consideration of $1000, with covenant against incumbrances. B. conveys to C. for $500. C. discovers an incumbrance on it of $700, which was created before A. conveyed. If B. had retained the land, he could

have discharged the incumbrance, and have recovered the amount paid from A.; but if C. pays it, he can recover from A. only the amount which he paid to B., and hence must either lose the land or must pay an additional price to retain it, without remedy against anyone, though A. has received its full value.

In the case of Mette v. Dow, supra, in which the great authority of Judge Cooper is given to the contention of plaintiff in error, the conclusion is based mainly on the following reasoning: "The covenant is a peculiar one, and not like an ordinary covenant for so much money. It is rather in the nature of a bond, with a fixed sum as a penalty, the recovery on which will be satisfied by the payment of the actual damages. Each vendor subject to this rule may be treated as the principal obligor to his immediate vendee, and as the surety of any subsequent vendee, to hold him harmless by reason of the failure of title, and the ultimate vendee, when evicted, is entitled to be subrogated to the rights of his immediate vendor against a remote vendor to the extent necessary to indemnify him. Such a vendee, to use the language of the Supreme Court of North Carolina, sues a remote vendor on the covenant to redress his (plaintiff's) own injuries, not the injuries of the immediate vendor." There are here several assumptions which are not, we think, in harmony with the object and spirit of the general rule of damages on the subject. It is assumed, first, that the covenant is one of indemnity; second, that it is laid down as a guide to ascertain the actual loss sustained by the plaintiff at the time of eviction; third, that such loss is the amount paid by plaintiff for the land. Each of these assumptions, we think, appears from the history of the rule to be erroneous, and they lie at the foundation of all of the reasoning on that side of the controversy. The analogy asserted between a covenant of warranty and the penalty of a bond does not exist either in fact or in law. The penalty of a bond may be, and generally is, an arbitrary sum fixed upon as a security for something else. It does not represent a price actually received by the obligor. The loss sustained by the obligee from a failure to perform its conditions is not the stated penalty, but something else, and the measure of damages is compensation for the other thing for loss of which the penalty is intended to give indemnity. The covenantor in a warranty receives the price for which he has sold the land, and the true meaning of his covenant, as fixed by those decisions which have established the general rule of damages, is that he will, in case the land is entirely lost, restore that price to the person who has lost the land. This rule, it is true, applies perfectly in only those cases where there is total eviction, and, in cases of partial loss, it has been modified so as to allow a recovery of only such proportion of the consideration as the amount of the loss bears to the whole of it. Again, the doctrines regulating the rights of principal and surety and the subject of subrogation have no application. The right of the person evicted to sue upon remote covenants is not derived from a subrogation to the rights of his vendor; nor is there anything like the relation of principal and surety. The cove-

nant of warranty, until it has been broken, passes, as a strictly legal right, with the land, when that is conveyed. Rawle on Covenants, pp. 334-336, 359. An intermediate owner of the land has no right of action upon the covenants under which he held until he has been made to respond to the claims of his covenantee. But the party evicted has the original right of action against all. Eustis v. Fosdick, 88 Texas, 615.

All of the cases which have adopted the rule given in Mette v. Dow are based, it seems to us, upon the same assumption pointed out in that decision. In some of the cases which maintain the position of plaintiff in error, it is objected that the other rule would give a different measure of damages to the person evicted against each of the warrantors in his chain of title, as he could recover from any one of them what that one had received as the price of the land. But this arises only from the difference in their contracts, and is precisely what the general rule intends. The warrantor fixes by his contract the limit of his own liability, and that cannot be changed by the contracts of others. The person evicted can have but one satisfaction. The arguments of the opposing authorities are, in our opinion, fully met in the dissenting opinion of Justice Ruffin in Williams v. Beeman, and in the opinion of the court in Brooks v. Black, supra.

The judgment of the District Court is not erroneous, and it is affirmed.

<em>Affirmed.</em>