## LOVE v. MINERVA PETROLEUM COR-PORATION.
### No. 3113.

Court of Civil Appeals of Texas. Beaumont.
May 29, 1937.

Rehearing Denied June 2, 1937.

Llewellyn & Dougharty, of Liberty, for appellant.

Hightower & Daniel, of Liberty, for appellee.

WALKER, Chief Justice.

On the 10th day of July, 1936, in district court of Liberty county, on trial to the court without jury, judgment was rendered in favor of appellee, Minerva Petroleum Corporation, plaintiff below, against O. C. Garvey and appellant, E. W. Love, for the sum of $595, with interest at 6 per cent. per annum from the 9th day of May, 1933. On motion of appellant the following conclusions of fact and law were filed by the lower court:

"I find that on the 6th day of May, 1933, Mrs. Mamie Young, as lessor, made, executed and delivered to E. W. Love, as lessee, a lease covering the oil, gas and other minerals in and under 34.15 acres of land in the R. O. Lusk Survey, in San Jacinto County, Texas, being the same land described in plaintiff's petition. I further find that at the time of executing said lease the said Mrs. Mamie Young had no title to any of the minerals in and under said tract of land.

"I further find that said lease was by the said E. W. Love sold, transferred and assigned by assignment dated May 6, 1933, to O. C. Garvey for a recited consideration of One Dollar ($1.00) and other good and valuable consideration the actual consideration paid being Five Hundred Ninety-five Dollars ($595.00) cash, the assignment containing the following covenant of warranty:

"'And for the same consideration, the undersigned for himself and his heirs, successors and representatives, do covenant with the said assignee his heirs, successors, or assigns, that I, E. W. Love, the lawful owner of the said lease and rights and interests thereunder and of the personal property thereon or used in connection therewith; that the undersigned has good right and authority to sell and convey the same, and that all rentals and royalties due and payable thereunder have been duly paid, and that the undersigned will warrant and defend the same against the lawful claims and demands of all persons whomsoever.'

"I further find that the said O. C. Garvey at said time, to-wit, May 6, 1933, was authorized by plaintiff, Minerva Petroleum Corporation, to obtain a lease on said land for them, and was authorized to pay therefor a sum not to exceed Seventeen Dollars ($17.00) per acre. That in negotiating for said lease, the said O. C. Garvey contacted the defendant E. W. Love with respect thereto and made the proposition to Love that he (Garvey) would pay Seventeen Dollars ($17.00) an acre for a lease on said land and that if Love could obtain a lease from the owner, Garvey would take an assignment of said lease at a price of Seventeen Dollars ($17.00) an acre, and that the said Love might have the difference in consideration between whatever he was required to pay the owner and the price of Seventeen Dollars ($17.00) per acre. That following said conversation and proposition, which occurred in the office of the said E. W. Love, in Cleveland, Texas, and said Garvey and the said Love together came to Liberty, Texas and went to the home of the said Mrs. Mamie Young, where the said E. W. Love, after a conference with the said Mrs. Mamie Young, obtained the lease hereinabove mentioned and described, paying therefor the sum of Two Hundred Eighty Dollars ($280.00) by his personal check to the said Mrs. Mamie Young. That he, the said Love, together with the said Garvey, immediately returned to Cleveland, Texas, where the assignment above mentioned and described was prepared by the said Garvey and executed and delivered by the said Love.

"I further find that payment for said assignment was made by the said O. C. Garvey by draft in the sum of Five Hundred Ninety-five Dollars ($595.00) drawn on Fort Worth National Bank, Fort Worth, Texas. That at said time the said Garvey had no funds of his own in said Fort Worth National Bank, and that said draft was accepted and paid by plaintiff, Minerva Petroleum Corporation.

"That the said E. W. Love, in taking said lease from the said Mrs. Mamie Young, had the promise and agreement of the said Garvey to purchase said lease at a price of Seventeen Dollars ($17.00) per acre, and that had it not been for said promise and agreement on the part of the

said Garvey, the said Love would not have taken said lease from the said Mrs. Mamie Young.

"I find that by instrument dated May 12, 1933, the said O. C. Garvey assigned said lease to plaintiff, Minerva Petroleum Corporation. I further find that the said O. C. Garvey received no consideration for said assignment other than a commission of One Dollar ($1.00) per acre, or Thirty-four and 15/100 Dollars ($34.15), paid by said Minerva Petroleum Corporation in accordance with its prior agreement with the said Garvey by which said Minerva Petroleum Corporation was to pay the said Garvey One Dollar ($1.00) per acre for any and all leases obtained for it.

"Conclusions of Law.

"In view of the above findings of fact, I conclude that plaintiff, Minerva Petroleum Corporation, is entitled to judgment against the defendant E. W. Love for Five Hundred Ninety-five Dollars ($595.00), being the amount of the consideration received by the said Love under his assignment of said lease to the said O. C. Garvey together with six per cent. (6%) interest thereon from May 6, 1933, the date when said consideration was paid."

And the following supplemental findings:

"I find that on the 6th day of May, 1933 when Mrs. Mamie Young executed the lease to E. W. Love, as well as on the dates when the lease was assigned by E. W. Love, to the agent of Minerva Petroleum Corporation, neither Mrs. Mamie Young nor E. W. Love had any title to the mineral in and under said tract of land. The mineral lease covering said tract of land was taken by the agent of Minerva Petroleum Corporation without actual knowledge of the fact that the minerals were owned by some other party, and Minerva Petroleum Corporation had no actual notice of such outstanding superior title at the time of the purchase in question from E. W. Love. At all of such times the minerals in and under said land were owned by Mildred D. Marshall, and she was claiming and asserting title to same.

"Mildred D. Marshall, owner of the superior title to said minerals, executed an oil, gas and mineral lease on said land to Shell Petroleum Corporation on May 13, 1933. Shell Petroleum Corporation recorded the mineral lease on said land and asserted title to the leasehold estate and notified Minerva Petroleum Corporation that they were claiming title to the leasehold estate and asked Minerva Petroleum Corporation to make a release of the lease executed by Mamie Young to E. W. Love. When such demand and assertion was made by Shell Petroleum Corporation, Minerva Petroleum Corporation determined that the superior title was owned by Mildred D. Marshall and Shell Petroleum Corporation.

"I further find that the attorney for Minerva Petroleum Corporation advised E. W. Love of these facts, and that E. W. Love negotiated with attorneys for Mildred D. Marshall, owner of the superior title, in an effort to adjust the matter, but that Mrs. Marshall was claiming and asserting title and no adjustment was effected.

"Conclusions of Law

"In view of the above findings of fact, together with the original findings herein filed, I conclude that E. W. Love had no title to the leasehold estate when he warranted same to the plaintiff, and that the superior title was asserted against plaintiff both by the owner of the minerals who in fee and the owner of the leasehold estate, both of whom were asserting the superior title; and that Minerva Petroleum Corporation is entitled to the judgment for $595.-00 being the amount of the consideration received by E. W. Love, together with six per cent (6%) interest thereon from May 6, 1933 until paid."

Appellant insists that "there was no finding by the court that there had been an eviction of the covenantee either actual or constructive," and that the mere existence of a superior title will not support a recovery on a warranty title, citing Rancho Bonito Land & Live-Stock Co. v. North, 92 Tex. 72, 45 S.W. 994, 996, and Graebner v. Limburger's Ex'rs (Tex.Com. App.) 293 S.W. 1100. The rule of law contended for by appellant is well established, but the facts of this case do not fall within that rule. The court found much more than the mere existence of a superior title. The holder of the superior title actively and affirmatively asserted its claim, and demanded of appellee a release of the claim it held under appellant. Being advised of the superior title, appellant made an unsuccessful effort to acquire it from the owner. As against the superior title, appellee was not required to assert a defense under the title conveyed to it by appellant; which in law was wholly without

merit. The facts of this case amounted to a legal eviction within the following proposition announced by the North Case, supra: "The warranty in former times could only be broken by an actual eviction from the possession, but in modern times the rule has been so far relaxed that an eviction in legal contemplation occurs when the facts are such that it would be useless for the covenantee to attempt to maintain the title conveyed him, e. g. where the holder of the superior title has taken actual possession or threatens suit."

In Jones' Heirs v. Paul's Heirs, 59 Tex. 41, our Supreme Court said:

"In former times a vendee could not sue upon his warranty unless he had been actually evicted by one claiming under a paramount title. Now, however, the law in this respect is not so strict. If a paramount title is positively asserted against the vendee, he is not required to make an unavailing and useless resistence against a claim of title which is manifestly superior and must prevail.

"Under such circumstances he may give up the land to the claimant, and resort to his warranty. But this ouster is pais (as it is called) does not amount to an eviction unless the superior title has been hostilely asserted."

See, also, Clark v. Mumford, 62 Tex. 531; Lott et al. v. Dashiell et al. (Tex.Civ. App.) 233 S.W. 1103.

It is our conclusion that the judgment of the lower court should be in all things affirmed and it is accordingly so ordered.