### TRICO OIL CO. v. PELTON et al.

### No. 13715.

Court of Civil Appeals of Texas.
Fort Worth.

March 11, 1938.

Rehearing Denied April 8, 1938.

**1210**

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Clay Cooke, of Fort Worth, for appellees.

BROWN, Justice.

This suit arose over the assignment of an oil and gas lease on a tract of land of about 2½ acres, in Rusk county, Tex., which had been carved out of a larger tract of 14 acres. The lease on such 14-acre tract appears to have been owned by one R. E. Blankenship, and on the 27th day of September, 1930, said Blankenship assigned such lease to W. V. Lester. The consideration is recited to be $10,500 cash in hand paid, "and in further consideration of the sum of $7,000.00 to be paid to me out of the proceeds of ½ of ⅞ths of the first oil produced and saved from the 14 acre tract hereinabove described, if, as and when produced, saved and marketed, and not otherwise." This instrument shows to have been filed for record on the 30th day of September, 1930, and to have been recorded in the deed records of Rusk county on the 28th day of October, 1930.

On September 27, 1930, W. V. Lester assigned the above-mentioned oil and gas lease to Trico Oil Company, and this instrument particularly calls attention to, and makes a part of the consideration thereof, the $7,-000 oil payment to be paid to said Blankenship out of the proceeds of the oil, using the same language that was used in the assignment from Blankenship to Lester. The affidavit of the county clerk of Rusk county,

Tex., attached to the certified copy of such assignment, is dated December 11, 1933, and shows that this assignment was then recorded in volume 150, at page 495, of the deed records of Rusk county. We call attention to this fact, because the plaintiffs in the instant suit did not secure their assignment to any part of the lease in question until February 28, 1935.

On the 3d day of October, 1930, Trico Oil Company assigned said lease, in so far as it covered a certain 2 acres of said 14-acre tract, to one J. S. Kimbrough, trustee, and uses these words: "Does hereby sell, transfer and assign all of the right, title and interest of the original lessee and present owner in and to said leases and the rights thereunder * * * to J. S. Kimbrough, Trustee, his heirs, successors and assigns. To have and to hold unto the said J. S. Kimbrough, Trustee, his heirs, successors and assigns, forever, and Trico Oil Company, for itself, its successors and representatives, covenants and agrees with J. S. Kimbrough, Trustee, his heirs, successors and assigns, forever to warrant and defend the title thereto against the lawful claims and demands of all persons whomsoever claiming or to claim the same, by, through or under Trico Oil Company, but no further." This instrument was recorded November 7, 1930, in the deed records of Rusk county.

On October 20, 1930, J. S. Kimbrough, trustee, assigned the lease covering said 2-acre tract to one Daniel C. Regan, trustee, and this instrument was recorded on January 12, 1933, in the deed records of Rusk county.

On November 14, 1930, Trico Oil Company, Daniel C. Regan, and H. E. Pelton, who is the husband of Mrs. Gwen Pelton, jointly executed an instrument, which recites in substance that on October 3, 1930, Trico Oil Company assigned the original lease owned by it, in so far as it covered certain south 2 acres of the 14-acre tract above mentioned, to H. E. Pelton, and that it had likewise assigned said lease, in so far as it covered the north 2 acres of a certain south 4 acres of said 14-acre tract, to J. S. Kimbrough, trustee, and such instrument further recites that said Trico Oil Company represents and warrants that it has made no disposition of the leasehold estate in the said 14-acre tract, except by execution and delivery of the two assignments described, which were made to H. E. Pelton and J. S. Kimbrough, trustee. It further recites that Pelton represents and warrants that he has

made no disposition whatever in the leasehold estate in the said south 2 acres, and that Regan represents and warrants that he has succeeded to all the right, title, and interest of J. S. Kimbrough, trustee, in and to the leasehold estate in the north 2 acres. The instrument further recites that surveys have been made and have established that each of the 2-acre tracts so described is less than 300 feet long from north to south, and for the purpose of vesting in Pelton and Regan, respectively, the title to tracts each 300 feet long from north to south, the supplemental assignment and agreement is made between Trico Oil Company and Pelton and Regan.

It appears that this instrument seeks to deliver to Pelton and Regan each a 2½-acre tract; that is to say, each gets an additional ½ acre. The portion of the instrument which purports to show what Trico Oil Company conveyed, and how same was conveyed of said leasehold estate, uses the following language: "Does hereby sell, transfer and assign all of the right, title and interest of the original lessee and present owner in and to said leases and the rights thereunder, insofar as they cover a strip consisting of all the south 600 feet in width of the west 14 acres * * * except the south 4 acres of said west 14 acres * * * to Daniel C. Regan, his heirs and assigns. To have and to hold unto the said Daniel C. Regan, his heirs and assigns, forever, and Trico Oil Company, for itself, its successors and representatives, covenants and agrees with Daniel C. Regan, his heirs and assigns, forever to warrant and defend the title thereto against the lawful claims and demands of all persons whomsoever lawfully claiming or to claim the same, by, through or under Trico Oil Company, but no further." In this instrument, Daniel C. Regan assigned to H. E. Pelton all of his interest "insofar as they cover a strip consisting of all the south 300 feet in width of the west 14 acres * * * except the south two acres of said west 14 acres."

On December 30, 1932, Daniel C. Regan executed an assignment covering the north 2½ acres of the south 5 acres of said 14-acre tract to N. B. Compton. The consideration recited is $1 and other good and valuable considerations. N. B. Compton is the brother of Mrs. Gwen Pelton.

On February 28, 1935, N. B. Compton assigned the said lease to Mrs. Gwen Pelton, as her sole and separate estate; the consideration recited being $1 and other good and valuable considerations.

Mrs. Gwen Pelton, joined by her husband, H. E. Pelton, brought suit in the district court of Tarrant county, against Compton, Trico Oil Company, W. V. Lester, and J. S. Kimbrough, relying solely upon the conveyances outlined by us hereinabove, alleging that the plaintiffs had no knowledge or notice of any defects or incumbrances upon and superior title reserved in the tract of land, the oil lease upon which was assigned to Mrs. Gwen Pelton, and alleging that "there existed against said land a superior title therein and to the oil and gas rights therein in one R. E. Blankenship, by virtue of the conveyance by the said Blankenship to W. V. Lester, under whom the defendant corporation claimed and deraigned title, by assignment dated September 27th, 1930, wherein, in conveying said rights to said Lester, the said Blankenship reserved in said conveyance to himself $7,000.00 to be paid out of the proceeds of ½ of ⅞ths of the oil and gas produced and saved from the said leased premises, reserving therein the title to said ½ of ⅞ths of all oil, gas and minerals under and to be produced from said leased premises until the said sum of $7,000.00 should be paid to the said Blankenship."

Plaintiffs seek to recover on the theory that there has been a breach of warranty and they pray for damages, and in the prayer tender to the defendants the said oil and gas lease, and pray that the court divest title thereto out of the plaintiffs and reinvest same in defendants.

The cause was tried to a jury, and at the conclusion of taking of testimony, the plaintiffs having requested same in open court, the trial court gave the jury a peremptory instruction to return a verdict in favor of the plaintiffs, as against the defendant, Trico Oil Company, for damages in the sum of $3,000, with interest, and divested the title to the oil and gas lease on said 2½ acres of land out of the plaintiffs and reinvested same in the defendant, Trico Oil Company, and rendered judgment that the plaintiffs take nothing as against the defendants Compton, J. S. Kimbrough, and W. V. Lester.

The defendant, Trico Oil Company, requested a peremptory instruction in its favor, which was refused by the trial court. It filed a motion for a new trial,

which was overruled, exception taken, and notice of appeal given. The defendant, Trico Oil Company, alone has appealed.

We are of opinion that the trial court should have given a peremptory instruction in favor of the defendant, Trico Oil Company. In the first place, the instrument executed by appellant, Trico Oil Company, to J. S. Kimbrough, does not contain either of the words "grant" or "convey." It is a simple assignment of an oil and gas lease, and purports only to "sell, transfer and assign all of the right, title and interest of the original lessee and present owner in and to" that fractional portion of the lease which was assigned. Such an instrument does not purport to assign any interest, right, or title other than that which the assignor then held, and this instrument purports to warrant and defend the title then in Trico Oil Company against the lawful claims and demands of all persons claiming, or to claim the same, by, through or under Trico Oil Company, but no further. The implied covenants which are provided for in article 1297 of the Revised Civil Statutes of Texas obviously have no application here.

What we have said with reference to the assignment covering two acres of the tract in controversy is equally pertinent to the instrument executed by Regan, H. E. Pelton, and Trico Oil Company, whereby an additional ½ acre only is involved.

The appellees, Pelton and wife, rely on the old case of Parish v. White, 5 Tex. Civ.App. 71, 24 S.W. 572, 573, by this court, in order to recover on the theory of a breach of warranty, but that case has no application here, as will be seen by a study of the facts and the opinion. In such case, the words "grant" and "granted" are used, and the grantor used the following words in attempting to restrict the covenant: "I bind myself, my heirs, executors, and administrators, to release and quitclaim unto the said John B. White, against every person whomsoever lawfully claiming the same, or any part thereof, through or by me."

In discussing this deed, this court said: "The contention * * * that the implied force of the word 'grant' was taken away by the concluding clause of quitclaim or special warranty—must also be denied. * * * This [clause] probably restricted the covenant to incumbrances created by or through the grantor, and the cases relied on by appellant would seem to be au-

thority to that extent, but, we think, no further. * * * Subsequent words in a deed should be very explicit to have the effect of withdrawing from the scope of the granting clause an incumbrance of the grantor's own creation."

Furthermore, in the Parish Case it appeared that there were two outstanding notes against the property when Parish sold same to White, and that when the deeds were exchanged, Parish told White of the existence of the two notes and promised to pay off and discharge the same.

If we are to treat the assignment of the oil and gas lease as a deed, it cannot, by reason of the words used by Trico Oil Company, be anything more than a quitclaim deed.

Such cases as Baldwin v. Drew, Tex. Com.App., 244 S.W. 987, Harrison & Co. v. Boring & Kennard, 44 Tex. 255, and Houston Oil Co. v. Niles, Tex.Com.App., 255 S.W. 604, and cases cited in the opinions, control the question before us.

Furthermore, appellees cannot be heard to say that they are purchasers without notice of the alleged defect in the title, or incumbrance thereon. Hagaman v. Shaklee, Tex.Civ.App., 243 S.W. 795, writ refused.

We go further and call attention to the fact that appellees' contention is unsound and they cannot recover damages in this suit against appellant, because, as is stated in the case of Parish v. White, supra, the restriction in the assignment from Trico Oil Company, even if there were in fact a covenant in such assignment, serves to restrict the covenant to incumbrances created by or through the assignor.

Here appellees are not complaining of any incumbrance created by Trico Oil Company. The incumbrance of which they complain was created by the assignment given by Blankenship to Lester, prior to the acquisition of any right in the leasehold estate by Trico Oil Company.

See, also, Union Mutual Life Insurance Co. v. Crowl, 28 Tex.Civ.App. 443, 67 S.W. 901, writ refused.

Another phase of the case before us is that it is undisputed that H. E. Pelton, the husband of Mrs. Gwen Pelton (who testified in so many words that Compton, Mrs. Pelton's brother, from whom Mrs. Pelton received the assignment on which

the right to bring this suit rests, actually took the assignment for H. E. Pelton), knew of the existence of the right of Blankenship to receive $7,000 out of the oil produced from the 14-acre tract, of which the small tract here in controversy is a part. He had purchased an assignment of the lease on a small tract immediately adjoining the tract under consideration.

There was no effort made by appellees to show that Trico Oil Company deceived them or misled them as to the Blankenship claim, or that they ever promised, before the assignment was procured by Compton, or by Mrs. Pelton, to pay off, or remove it. Any subsequent conversations, or negotiations, or promises, if ever made, were without consideration on the part of Trico Oil Company, and do not "relate back" to the assignment by Trico Oil Company to either Kimbrough or Regan.

But this is not all. We have treated the right of Blankenship to be paid $7,000 out of the oil produced on the whole of the said 14-acre tract as an incumbrance. Assuredly, it cannot be said that, even if such be an incumbrance, Blankenship can ever claim any right under it until the oil and gas is actually produced from the land, saved, and marketed. Such are the conditions of the instrument under which he claims. In the case before us no effort is made to show that Blankenship is claiming anything now, or that he has made any demands.

Even if appellees had an express or an implied warranty on which they could rely, they would not appear to us to be entitled to bring suit until Blankenship's rights actually arose and they were injured thereby.

It further appears to us that when Blankenship's rights come into actual existence, appellees' cause of action would be (if they were entitled to recover) what was paid to satisfy Blankenship. Or if appellees could not satisfy him (as pointed out in the Parish Case, supra), and they lost all for which they had contracted because of their inability to do so, then they could recover what they paid for the purchase of the assignment.

In this connection, let us say that it is obvious that the incumbrance caused by the reserved oil payment could not be the full $7,000. The tract on which such incumbrance rests is 14 acres. The portion in which appellees are interested is a bit more than a seventh of the whole tract. The record discloses that there were four producing wells on the portion other than appellees' 2½ acres.

There has been no eviction recognized by the courts of Texas, and even if appellees had been entitled to sue for damages, such suit has been prematurely brought.

We find no breach of warranty and no cause of action arising under fraud or mutual mistake.

The judgment of the trial court rendered against appellant, Trico Oil Company, is reversed and here rendered for the appellant; the judgment of the trial court is in all other respects undisturbed.

### On Motion for Rehearing.

When an assignment of an oil and gas lease is registered—as was done in the instant case—such registration operates to give constructive notice of its contents to all the world. 31 Tex.Jur. par. 272, p. 970.

In the suit at bar, actual notice of the payment of the sum of $7,000 out of the oil, if, as, and when same is produced and marketed, was had by appellees, in addition to the constructive notice.

Texas Jurisprudence, vol. 31, par. 279, p. 980, goes further and announces the rule in Texas that: "Covenants in respect of title are not, it seems, implied in an assignment of a lease. Accordingly, an assignor can be held liable only on his express warranties and on those implied by the statute from the use of the word 'grant' or 'convey.' But inasmuch as the statutory implications provide protection only against prior conveyances and existing encumbrances, they are of no avail to protect the assignee against a failure of title accruing from the use of fraud in procuring the lease."

This text, in the same paragraph, in discussing an express warranty against incumbrances, says: "While it seems that an express warranty against incumbrances is breached at the time the assignment is made, if an incumbrance on the leasehold exists, no right of action thereon accrues until the assignee is dispossessed or has been compelled to discharge the incumbrance."

We carefully pointed out, in our original opinion, that Trico Oil Company did not create the "oil payment" incumbrance, of which complaint is made. It simply recog-

nized such "oil payment" in the assignment made to it by its assignor. This recognition on its part not only did not bring into being the incumbrance, but added nothing to it, for Trico Oil Company was bound by the provisions of the assignment, made long before its acquisition of any interest in the lease.

We pointed out, also, the fact that, in its assignment to J. S. Kimbrough, Trico Oil Company did not use either of the words "grant" or "convey," and whatever it warranted was limited by the following words: "Covenants and agrees with J. S. Kimbrough, Trustee, his heirs, successors and assigns, forever to warrant and defend the title thereto against the lawful claims and demands of all persons whomsoever, claiming or to claim the same by, through, or under Trico Oil Company, but no further."

Even if such language does not bring the instrument squarely into the class designated as "quit claims," or if the language be held not to limit the warranty of title to the claims of those who hold "by, through, or under Trico Oil Company, but no further," nevertheless we are unable to see wherein the title is involved, or wherein same has failed. There is no contention here that the title to the leasehold interest was not vested in the assignee of Trico Oil Company, and on through subsequent assignments to appellees. The sole contention is that there is an "oil payment," or a payment of the sum of $7,000 to be made out of the oil if, as, and when same is produced and marketed, and that such incumbrance gives appellees the right to sue Trico Oil Company on its warranty.

This is the language used in appellees' prayer, "that upon final hearing hereof they have judgment against the defendants' for their damages aforesaid, together with interest, costs of suit and general and special relief, and they will ever pray, and plaintiff tenders to defendants said oil and gas lease and asks that the court divest title thereto out of plaintiff and reinvest same in defendants."

An examination of appellees' pleading discloses that they rely upon allegations to the effect that the existence of the $7,000 oil payment (of which they complain) and that of other oil payments, thereafter provided for (of which they make no complaint), renders the lease valueless, and therefore the title has failed.

As we said in the original opinion, there is not even a scintilla of evidence tending to show that Trico Oil Company practiced any fraud upon appellees. Such company had no dealings with appellees when Mrs. Gwen Pelton took an assignment of the lease from her brother, Compton. A further examination of appellees' pleading discloses that the "fraud" relied upon is simply the language used by Trico Oil Company in its assignment of the lease to Kimbrough. The contention that such language constitutes "fraud" is wholly without merit. We hold definitely that appellees' pleading does not raise any issue of fraud practiced by Trico Oil Company upon appellees, or upon any other party to this suit who has acquired any interest in the leasehold estate, from the time Trico Oil Company received its assignment down to appellees' assignor Compton.

Finally, appellees contend that the judgment of this court is inequitable and unjust, in that we have reversed the judgment of the trial court wherein money damages were awarded appellees and rendered judgment in favor of Trico Oil Company on such issue, and at the same time affirmed that portion of the trial court's judgment wherein title to the leasehold interest was divested out of appellee Mrs. Gwen Pelton and reinvested in Trico Oil Company.

In our original opinion we said: "The judgment of the trial court rendered against appellant, Trico Oil Company, is reversed and here rendered for the appellant." We thought this language plain enough, but in order that appellees may understand perfectly what we mean, we overrule appellees' motion for a rehearing and enlarge our original opinion by declaring: The judgment of the trial court rendered against appellant, Trico Oil Company, and in favor of appellees for money damages, or the recovery of a money judgment against said appellant, is hereby reversed, and judgment here rendered that appellees take nothing as against Trico Oil Company; and the judgment of the trial court divesting title to said leasehold estate out of appellees and reinvesting same in Trico Oil Company is likewise reversed and here rendered, denying appellees the right to have such title to the said oil and gas lease, and said leasehold estate divested out of appellees, or either of them, and reinvested in Trico Oil Company.

Motion overruled.