## COMPTON v. TRICO OIL CO. et al.
### No. 12437.

Court of Civil Appeals of Texas. Dallas.
July 16, 1938.

Rehearing Denied Oct. 8, 1938.

Clay Cooke, of Ft. Worth, for appellant.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellees.

YOUNG, Justice.

Appellant, as plaintiff below, brought suit against appellee, Trico Oil Company, for breach of title warranty following an assignment of an oil and gas lease situated in Rusk County, Texas. The issues between the parties were strenuously litigated in the lower court, there having been two trials; the first resulting in judgment for plaintiff Compton on June 18, 1935, in the full amount received by defendant for the lease in question, with interest, as to which a new trial was granted. Upon second trial, judgment was rendered on October 5, 1936, that plaintiff take nothing by reason of his suit, from which this appeal was taken. Both trials were to the court.

On April 4, 1928, Adella Lolley et al., executed an oil and gas lease in usual Texas form, conveying to C. M. Joiner the full rights to enter upon, drill for, develop and retain all oil produced from a much larger acreage, of which the 2-acre lease in suit is a part, subject only to a ⅛ royalty retained by said fee owners; Joiner later conveying the full rights in and to the entire acreage to R. E. Blankenship. On September 27, 1930, Blankenship executed an assignment of the Joiner leasehold, insofar as it covered a 14-acre tract, to W. V. Lester (general manager of appellee) for a recited consideration of $10,500 cash and $7,000 to be paid out of ½ of the first oil and/or gas produced from said lease; said Lester conveying on the same date (both instruments being filed at the same time) the 14-acre leasehold to appellee, Trico Oil Company, which company assumed as part of the consideration the $7,000 payment out of ½ of the first oil produced under the terms of the prior lease to R. E. Blankenship. On October 3, 1930, appellee executed to appellant's immediate warrantor, H. E. Pelton, a conveyance of the leasehold estate, in and to the 2-acre tract in suit out of the 14-acre Blankenship lease. This instrument, after reciting the execution of the original leases by Adella Lolley et al. to C. M. Joiner, contained the following provisions: "For the consideration hereinafter stated Trico Oil Company, a Texas corporation, the present owner of said three leases and all rights thereunder or incident thereto, does hereby sell, transfer and assign all of the right, title and interest of the original lessee and present owner in and to said leases and the rights thereunder insofar as they cover the south two (2) acres of the West fourteen (14) acres of Tract Nine (9) according to the plat of the W. H. Frederick Estate land in the Juan Zimines League Survey, Rusk County, Texas, which is recorded in Book 141, at page 330, Deed Records, Rusk County, Texas, together with all personal property used or obtained in connection therewith, to H. E. Pelton, his heirs and assigns, to have and to hold unto the said H. E. Pelton, his heirs and assigns forever, and Trico Oil Company for itself, its successors and representatives, covenants and agrees with H. E. Pelton, his heirs and assigns forever to warrant and defend the title thereto against the lawful claims and demands of all persons whomsoever".

The consideration paid by H. E. Pelton for the above lease was $2,500 in cash and $2,500 to be paid out of ½ of ⅞ of the first oil and/or gas produced therefrom. At the time of the assignment of this 2-acre tract to Pelton, appellee Oil Company was not the owner of said lease and all rights thereunder, by virtue of its agreement to deliver ½ of ⅞ of the first oil produced therefrom to the extent of the $7,000 oil payment. This defect in title was not disclosed to assignee Pelton at the time of his assignment and payment of the cash consideration, and no abstract of title was furnished. Sometime later, the abstract to the two acres was made but the retention of the Blankenship oil royalty was not shown. Some months later, Pelton, in attempting to get the 2-acre lease drilled, discovered the existence of the $7,000 oil payment, and failing to get it released, conveyed the tract by general warranty to his brother-in-law (appellant here) on June 1, 1933, and this suit was filed in August of the same year, the lease being tendered back to defendant company and a return of the purchase money demanded, with legal interest.

Before the above mentioned assignment of this lease to appellant by Pelton, and on October 4, 1930, the latter had transferred a ¼ undivided interest therein to Bud Harrell, who, in turn had assigned fractional interests to some 20 other individuals, assignor Harrell, however, retaining a power of attorney for a period of five years to reconvey these fractional interests, if same should be deemed for the best interest of the parties to the Harrell assignments. Many of the assignees under the Harrell instruments reconveyed their infinitesimal interests back to Bud Harrell, the remaining parties being made defendants to this

suit on the last trial of the case below, for the purpose of clearing the title to the 2-acre lease of the Harrell transactions; the original ¼ Harrell interest being conveyed back to H. E. Pelton by said Harrell on January 27, 1931.

The remaining part of the 14-acre tract, subject to the $7,000 Blankenship oil payment, was never drilled until after filing of the instant suit, and about December 1934 or January 1935, and not until appellee had secured a written agreement from Blankenship, reducing the amount of oil to be received by him under such oil payment to ⅟₁₆ of ⅞, instead of ½ of ⅞. In March 1936, Adella Lolley et al., original owners and lessors, filed suit to cancel the lease on this particular tract, for failure to perform certain development requirements. On the last trial of this case, appellee introduced in evidence, over plaintiff's objection, an instrument dated August 19, 1935, executed by R. E. Blankenship, releasing the lien of the $7,000 oil payment, insofar as the same covered the south two acres in question of the 14-acre tract.

Appellant's main assignments of error on this appeal (two in number), submitted together, are:

"(1) The Court erred in rendering judgment for the defendant against the plaintiff, because the undisputed evidence and admissions of the defendant and plaintiff shows that the said plaintiff sold the seven-eighths oil and gas lease on the land in controversy to plaintiff's grantor, for the sum of $2500.00 with general warranty of title; that the said title thereto had failed, and plaintiff was entitled to recover the said $2500.00 with interest from the date paid.

"(2) The Court erred in refusing to render judgment for plaintiff for the amount paid for said lease to the defendant, with 6% interest thereon from date paid, because the undisputed evidence shows breach of warranty of title to the property conveyed by general warranty to plaintiff by defendant".

Appellee's first five counter-propositions to the propositions of appellant under the above assignments of error are: (1) the $7,000 oil-payment instrument in favor of R. E. Blankenship, by its terms, was not a reservation of a lien upon real estate, or upon the title to the 2-acre tract, nor did same in any way affect the title to real estate, or provide a basis for an action for breach of covenant of title; (2) appellant has failed to prove any such eviction or failure of title to real estate as to furnish a basis for the application of the remedy of breach of covenant of title; (3) even assuming that such oil payment affected the title to real estate, same was no more than an encumbrance thereon, and there was a failure of pleading and proof as to the correct measure of damage, and as to the cost under sufficient threat of foreclosure to remove the alleged encumbrance as affecting the two acres in controversy, wherefore, no basis existed for the rendition of any judgment whatever for appellant; (4) assuming a cause of action had arisen against appellee by reason of the oil payment, the same had accrued prior to the assignment of appellant and belonged to Pelton, the owner of the lease at such time, unless assigned as a chose in action by Pelton to appellant; wherefore, the latter was not authorized to maintain this suit, the assignment of the lease to appellant not carrying with it title to any cause of action accruing by reason of the alleged breach of warranty of title to said real estate; and (5), the pleadings showing the present suit to be one of rescission and cancellation, no grounds for recovery existed in appellant as against appellee, because plaintiff Compton was not a party to the conveyance sued upon, and unable to tender back the property which his immediate warrantor, H. E. Pelton (a third party here) had received from appellee Oil Company.

The matters for our determination will be considerably simplified by keeping in mind the subject-matter involved in the instrument which will be referred to as the "Trico-Pelton two-acre lease"; also as to the nature and effect of appellee's general warranty thereto. This paper covenanted that the Trico Oil Company was the present owner of the leases of which the two acres was a part, and the rights thereunder and incident thereto; and appellee sold, transferred and assigned all of the right, title and interest of the original lessees and present owner in and to said leases, and all privileges thereunder insofar as they covered the leasehold estate here involved. The subject-matter of the instrument, therefore, was a conveyance of the oil and gas leasehold rights as they existed in C. M. Joiner, original lessee, which rights, in turn, were the full ⅞ working interest—that is, the right to

develop, drill for, produce and retain all of the oil thereunder, subject to the ⅛ royalty to be paid the land owner. It was the full ⅞ rights that were conveyed and warranted. Appellee did not possess such rights and privileges at the time, nor could it deliver same to Pelton by reason of the $7,000 reservation of oil in Blankenship. By reason of appellee's agreement to make the oil payment just mentioned, it conveyed to Pelton only the right and privilege of drilling and producing the oil under the lease upon payment to said Blankenship of a rent or royalty of ½ to the extent of $7,000, after paying the ⅛ to the original lessors. In 12 Tex.Jur. (Covenants and Conditions) Sec. 14, page 22, it is said "that a deed with covenant of general warranty means that the grantor has not conveyed the same estate, or any right, title or interest therein, to any person other than the grantee, and that the property is free from encumbrances", citing Rives v. James, Tex.Civ.App., 3 S.W.2d 932; and "it is said to be the broadest and most effective covenant, and the only one in general use in Texas" (Tex.Jur.supra). Whether the presence of the over-riding royalty or oil payment of Blankenship in appellant's title be treated as an interest in land, under Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; Tennant v. Dunn, Tex.Sup., 110 S.W.2d 53, 57, or as a lien encumbrance as designated by defendant Oil Company and Blankenship, we think the result was obviously a breach of the warranty to the 2-acre tract, and presented all the elements of a cause of action. We shall now consider when such action arose and whether appellant is entitled to here maintain it.

 As has been already pointed out, the rights and privileges assigned to Pelton, and the covenant involved, warranted to said grantee that appellee Oil Company was the owner thereof, and all the rights of the original lessee, subject to a ⅛ royalty. Such instrument guaranteed to Pelton the remaining ⅞ of the oil produced after cost of development; but upon attempting to possess and explore his leasehold, this assignee discovered that out of the first oil to be produced therefrom, the product, to the extent of $7,000, was the property of Blankenship, free of all cost, in the nature of an over-riding royalty to ⁷⁄₁₆ of the initial production. This, to our mind, precluded H. E. Pelton from ever possessing the rights and privileges warranted to him, and as contemplated under the terms of the lease to said 2-acre tract. It is undisputed that the cost of drilling on the lease was around $20,000 and, under the testimony of appellee's general manager (Lester) it was impracticable for anyone to drill on said site with the $7,000 oil payment outstanding; also that the attorney for Blankenship refused to take any steps toward releasing or removing this prior interest. We conclude that the leasehold warranted to Pelton by appellee was materially different from that actually conveyed, and that such covenant was broken when made. "According to Mr. Rawle, the strong current of American authority is in favor of the position that the covenant for right to convey is one in presenti, and if broken, the breach occurs at the moment of its creation; the covenant, in effect, being that a particular state of things exists at that time, and this not being true, the delivery of the deed which contains such a covenant causes an instantaneous breach". Westrope v. Chambers' Estate, 51 Tex. 178; Summers on Oil & Gas Law, page 574; Washburn on Real Property (6th Ed.) Vol. 3 Secs. 2373-74, 2384. When we consider that the rights of assignee Pelton were entirely with reference to the amount of oil that could be produced from this drilling site, after cost of development, and that, of the prospective oil under the lease, the superior right to the first production to the extent of $7,000 was in another, it follows that a superior title existed and was being asserted to the particular subject-matter of the sole transaction between the parties. Also, it being inequitable to require such assignee to discharge this encumbrance, which exceeded the value of his purchase, the cases relied upon by appellee do not apply. In Love v. Minerva Pet. Corporation, Tex.Civ.App., 105 S.W.2d 892, concerning suit on a warranty for the purchase price of an oil and gas lease, the facts being that the warrantor had no title, because the minerals had been previously conveyed to another, it was held [page 894]: "As against the superior title, appellee was not required to assert a defense under the title conveyed to it by appellant; which in law was wholly without merit. The facts of this case amounted to a legal eviction within the following proposition announced by the North Case [Rancho Bonito Land & Live-Stock Co. v. North, 92 Tex. 72, 45 S.W. 994],

supra: 'The warranty in former times could only be broken by an actual eviction from the possession, but in modern times the rule has been so far relaxed that an eviction in legal contemplation occurs when the facts are such that it would be useless for the covenantee to attempt to maintain the title conveyed him, e. g. where the holder of the superior title has taken actual possession or threatens suit.' In Jones' Heirs v. Paul's Heirs, 59 Tex. 41, our Supreme Court said: 'In former times a vendee could not sue upon his warranty unless he had been actually evicted by one claiming under a paramount title. Now, however, the law in this respect is not so strict. If a paramount title is positively asserted against the vendee, he is not required to make an unavailing and useless resistance against a claim of title which is manifestly superior and must prevail".

■ Consequently, we conclude there was such a breach of the Trico-Pelton lease, as to warranty, and a constructive eviction of the assignee therein, as would enure to the latter a legal claim for refund of the purchase price thereof under the principles of Hollingsworth v. Mexia, 14 Tex.Civ.App. 363, 37 S.W. 455. While Pelton was the record owner of the lease, he endeavored to finance and develop the same, but his efforts were vain and fruitless by reason of the Blankenship overriding interest. No action was taken by Pelton, though it appears he was continuing to await performance by appellee of its repeated promises to clear the title, so that the lease might be drilled. In this situation and on June 1, 1933, Pelton conveyed by general warranty this 2-acre tract to appellant, his brother-in-law, in consideration of certain automobile repair work valued from $300 to $800, with Pelton's promise to clear up the title and look after the lease on behalf of said appellant. Although the warranty of appellee, which has been under discussion, ran to "H. E. Pelton, his heirs and assigns", yet the breach thereof occurred during Pelton's tenure, and was not assigned to Compton, the plaintiff below, unless under the general warranty in the instrument of date June 1, 1933. No transactions were directly had between appellant and appellee Oil Company after this date; nor was any action taken by appellant, except the filing of this suit later in the same year. Under this state of the record, we think the authorities are in accord with appellee's fourth counter proposition, which presents substantially the following principle of law from 7 R.C.L. (Covenants) Sec. 118, page 1193: "The question who are proper parties in actions on covenants necessarily depends on the nature of the particular covenant, whether personal or running with the land * * *. On the other hand, he in whose time a covenant running with the land is broken, whether the grantee or one who claims and holds under him, is the proper person to bring an action for a breach thereof. Where a railroad company erects as a permanent structure upon land of which it holds only the right of way, a culvert which diverts a watercourse, in breach of a covenant running with the land, the damages are original. The right of recovery therefor arises at once, and accrues in favor of the one who owned the premises at the time; and a conveyance of the fee after such breach does not operate as an assignment of the right of action to the grantee * * *."

■ The text just quoted is generally supported by our State decisions. Penney et al. v. Woody et al., Tex.Civ.App., 147 S.W. 872, citing Alvord v. Waggoner, 88 Tex. 615, 32 S.W. 872; Hollingsworth v. Mexia, supra. See Shannon et ux. v. Childers, Tex.Civ.App., 202 S.W. 1030, where it is stated [page 1031]: "The authorities say that, if once broken by eviction, the covenant of warranty stands upon the same ground as those covenants which are broken as soon as made; that it then ceases to run with the land, and the action for the breach of the covenant can be maintained only by the owner of the land and assignee of the covenant at the time it is broken." (citing authority). See, also, Washburn on Real Property (6th Ed.) Secs. 2373–84, supra; 15 C.J. (Covenants) page 1258, Sec. 79. In Eli v. Trent et al., 195 Ky. 26, 241 S.W. 324, it is said that a covenant of title, being breached when deed was delivered, because the grantor did not own the mineral rights in the lands described, a subsequent grantee cannot recover upon that breach of covenant without proving an assignment by the immediate grantor of a right of action therefor. Appellant's remedy, therefore, is against his vendor (Pelton) for such damages as occurred immediately upon the conveyance to him

by general warranty of this ill-fated drilling site.

Appellant's remaining assignments, upon consideration, are overruled. The last or fourth assignment complains of the admission by the lower court, upon the second trial, of an instrument releasing the Blankenship oil payment. This document may have been incompetent and not binding upon appellant, but it had no substantial effect upon the matters at issue, nor any bearing upon the facts which impel us to an affirmance of this record. Neither do we consider that our conclusions in the instant case are in conflict with the only issue decided in Trico Oil Co. v. Pelton et al., Tex.Civ.App. Fort Worth, 114 S.W.2d 1209. The decision there hinged upon the nature of the instrument sued upon as containing features of warranty, Judge Brown holding the same to be merely a quit-claim deed. All else in the case last cited as to the $7,000 oil payment, the nature and character of such instrument, and the rights of Blankenship thereunder, are not necessarily pertinent to the point there decided; nor do we consider the same in any wise binding on this court in the construction of another and different written assignment. The writer has given this record lengthy study and attention, and the briefs of both parties fairly exhaust the law apropos to all phases of this rather difficult and involved litigation.

We conclude that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

Affirmed.

### On Motion for Rehearing.

Appellant contends that we did not consider, but overlooked, his third assignment of error, though our opinion above states otherwise. This assignment complains of a lack of jurisdiction of the trial court to grant motion for a new trial following the first judgment, by reason of the strict statutory construction that should be accorded subds. 28 and 29 of Art. 2092, R.S., Vernon's Ann.Civ.St. art. 2092, subds. 28, 29. We have again fully studied this assignment, checking the chronology of the motions, original and amended, for new trial, and final order thereon.

We conclude the trial court was well within the limitations of Dallas Storage & Warehouse Co. v. Taylor, 124 Tex. 315, 77 S.W.2d 1031, as to jurisdiction. The court's decree recites that the hearing for a new trial was carried forward to the later date by agreement, when the amended motion of appellee was heard and granted; there being nothing before us to indicate that the trial court considered for any purpose the "trial amendment", of which appellant complains, or that its filing constituted anything more than surplus pleading.

The matters presented in appellant's motion for rehearing have been fully considered and are in all respects overruled.

Overruled.