## Johnie Jackson v. M. C. DeGuerin et al.

No. 6290. Decided January 30, 1935.

(77 S. W., 2d Series, 1041.)

*Warren & Warren,* of Tyler, *Dan Moody, J. B. Robertson* and *Thos. B. Greenwood,* all of Austin, for plaintiff in error, Johnie Jackson.

In the face of Jackson's open, visible, adverse, and actual possession of the fifty acres of land, no one could acquire any interest therein as an innocent purchaser. Paris Grocer Co. v. Burks, 101 Texas, 110; Watkins v. Edwards, 23 Texas, 443; Ramirez v. Smith, 94 Texas, 191, 59 S. W., 258; Cardwell v. Shifflet, 294 S. W., 219 (Com. App.); Albright v. Hoyt, 57 S. W. (2d) 343.

*Saye, Smead & Saye,* of Longview, and *W. E. West,* of Canton, for defendants in error, Falvey and Rushing, and

*Lasseter, Simpson & Spruiell,* of Tyler, for defendant in error, DeGuerin and Blanchard.

There being no evidence to show actual possession in plaintiff Jackson, the defendants Falvey and Rushing were innocent purchasers. McWhorter v. Oliver, 2 S. W. (2d) 281; Hill v. Pure Oil Co., 38 S. W. (2d) 855; Ball v. Norton (Com. App.), 238 S. W., 889; Kennedy Pasture Co. v. State, 111 Texas, 200, 231 S. W., 683.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by the plaintiff in error, Johnie Jackson, against M. C. DeGuerin, J. B. Blanchard, J. C. Falvey and J. S. Rushing. Jackson claims the equitable title to a certain tract of 50 acres of land in Smith County, under a certain trust agreement between him and DeGuerin, and he seeks to enforce his rights under the agreement. Falvey and Rushing hold an oil lease on the land, which was executed to them by DeGuerin after the trust agreement was made. Blanchard holds, under assignment from DeGuerin an interest in the royalty rights under said lease. The case was tried to a jury resulting in a judgment for Jackson against all the defendants. On appeal, the Court of Civil Appeals affirmed the judgment as to DeGuerin and Blanchard and reversed as to Falvey and Rushing and rendered judgment for them. 50 S. W. (2d) 443.

The application of Jackson for the writ of error was granted. The application of DeGuerin and Blanchard was granted because Jackson's was.

The material facts are substantially as follows:

Eliza Cole, who died intestate in the year 1928, owned, at the time of her death, the 50-acre tract in controversy. She left seven children, including the mother of Johnie Jackson. In December, 1929, DeGuerin and Jackson entered into an agreement which was to the effect that DeGuerin was to buy the 50-acre tract from the Cole heirs for Jackson, and Jackson was to pay DeGuerin, within three years, the sums that the latter paid out in acquiring the land, with interest. DeGuerin was to take the deed from the Cole heirs in his own name to secure the payment by Jackson of said sums. In pursuance of the agreement, DeGuerin acquired the land, took the deed in his name, and same was duly recorded on February 7, 1930. At the time of the agreement DeGuerin signed and delivered to Jackson the following instrument:

"Overton, Texas, Dec. 19, 1929.

"This is to certify that I have this day agreed to sell the fifty acre tract of land bought of the Eliza Cole heirs to Johnnie Jackson for the purchase price that I had to pay for same plus all expense that I am out on said place, including interest and other expense, and I further agree to make said Jackson a deed to same as soon as he can make me a payment on same to the amount of $100.00 cash, this will hold good for three years. I am to hold all mineral rights to same for this length of time.

"M. C. DeGuerin."

This instrument was never recorded. On October 4, 1930, DeGuerin executed to Falvey and Rushing an oil lease on the tract of land. Shortly after the said trust agreement was made, Jackson took control of the 50-acre tract, put 30 acres into cultivation, and he and his family raised a crop of cotton on said 30 acres, during the year 1930. He gathered 5½ bales of cotton from the land that year. He was raising another crop thereon in June, 1931, when this case was tried. The 50-acre tract, all during the year 1930, was unfenced, except on one side, and had no other improvements on it. All during said year Jackson and his family resided on the Mayfield farm, about a quarter of a mile from the 50-acre tract. DeGuerin, who was a merchant, had charge of the Mayfield farm, which contained about 500 acres, and Jackson was one of his tenants on said farm in 1929 and in 1930, and cultivated land there. The 50-acre tract had no connection with the Mayfield farm. It was a distinct tract of land.

At the trial, all fact issues were determined by the jury in favor of Jackson. The case as it appears before us involves but two questions of law: (1) the construction of the written instrument set out above; and (2) whether Jackson was in such possession of the 50-acre tract on October 4, 1930, the date of the oil lease, as to put Falvey and Rushing on an inquiry.

■ The first question arises in connection with the contention of counsel that the suit against DeGuerin and Blanchard was premature—same having been brought and tried in the year 1931. The particular provision of the instrument hereinabove set out upon which the contention is based reads: "I am to hold all mineral rights to same for this length of time." It is insisted that, regardless of what time during the three year period that Jackson paid the sums which he was required to pay, DeGuerin, by virtue of this provision, had the absolute

right to hold the mineral estate in the land for the period of three years. In construing said provision the entire transaction from which the instrument arose must .be considered. As said, that transaction involved the making of a trust agreement between DeGuerin and Jackson regarding the land that was to be acquired from the Cole heirs. The nature of that agreement, as already stated, was that DeGuerin was to buy the land for Jackson, and take title in his own name as security for the payment by Jackson, within the period of three years, of the sums which the latter agreed to pay to DeGuerin in reimbursement. The instrument in question is but a part of that agreement. Looking at the entire agreement it cannot be reasonably inferred that the parties intended anything else, with reference to the title to the land which DeGuerin was to acquire from the Cole heirs, than that Jackson, upon his full compliance with the terms of the agreement, was to become immediately entitled to a deed for the land, including the mineral estate. There was no reason for DeGuerin to retain the legal title to the mineral estate after the debt was paid. Having no foundation in reason, the provision in question will not be given the meaning contended for, since a reasonable meaning is deducible when the entire transaction is taken into consideration.

We now take up the question of whether or not Jackson was in such possession of the 50-acre tract, on October 4, 1930, as to put Falvey and Rushing on an inquiry. It will be remembered that Jackson raised a crop of cotton on the land that year, and on this depends Jackson's claim that he had actual possession of the land when the oil lease was made by DeGuerin on the date mentioned.

■ There is no higher type of physical facts to denote actual possession of a given tract of land than a growing crop; but, standing alone, the possession thus revealed is insufficient to put a purchaser on an inquiry. A purchaser would be justified in assuming that the possession is that of the holder of the record title, unless the visible circumstances attending the possession at the time be of such import as to indicate distinctly, to a prudent observer, a different possessor. Paris Grocer Co. v. Burks, 101 Texas, 106. Counsel for Jackson rely on Collum v. Sanger, 98 Texas, 162, and Ramirez v. Smith, 94 Texas, 184, as support for the proposition that a purchaser is not relieved of making inquiry of the possessor, merely because the possession is consistent with the record title. Counsel overlook the distinguishing feature of those cases. In each of them

the appearances on the land pointed to the possessor. The possessor was actually residing on the land. Plainly a purchaser would not be justified in assuming that a person is not in possession of the land upon which he resides.

In the present instance there was not a single visible circumstance, existing at the time, which pointed to Jackson as the possessor of the 50-acre tract. He resided at a different place and there was no visible circumstance to indicate a connection between his use of land there and his use of the 50-acre tract.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 30, 1935.