WESTERN METAL MFG. CO. OF TEXAS v. CAMERON COUNTY WATER IMPROVEMENT DIST. NO. 8.

No. 13545.

Court of Civil Appeals of Texas. Fort Worth.

April 2, 1937.

Rehearing Denied May 21, 1937.

H. B. Galbraith, of Brownsville, for appellant.

Graham, Graham & Graham and H. L. Faulk, all of Brownsville, for appellee.

SPEER, Justice.

This suit was instituted in the 103d district court of Cameron county, Tex., by the Western Metal Manufacturing Company of Texas, hereinafter referred to as plaintiff, against the Cameron County Water Improvement District No. 8, hereinafter referred to as defendant, for an indebtedness of $3,595.45, alleged to be due plaintiff by defendant.

The plaintiff went to trial upon its first amended original petition. The defendant presented a general demurrer and several special exceptions to plaintiff's pleadings and they were all sustained by the trial court. The plaintiff declined to amend and the cause was dismissed. From these rulings the plaintiff perfected its appeal to the San Antonio Court of Civil Appeals, and the Supreme Court has transferred the case to this court.

The plaintiff is a private corporation, with offices and principal place of business at Houston, Tex., and the defendant is a municipal corporation, commonly known as a water improvement district, organized under article 16, section 59, of the Constitution of the state of Texas, and governed by chapter 2, title 128, of the 1925 Revised Civil Statutes of this State (article 7622 et seq.), with its principal place of business and offices located at Brownsville, Cameron county, Tex.

We shall make a condensed statement, by paragraphs, of plaintiff's pleadings, the better to enable us to identify those parts to which exceptions were sustained by the court.

1. The plaintiff has been for many years engaged in the manufacture and sale of metal products, particularly metal culverts, pipe, frames, and irrigation gates. It sold to defendant, at intervals beginning April 27, 1931, and ending August 16, 1932, more than fifty articles of merchandise, ranging in values from about $9 to $235 each, covered by twelve itemized bills and statements attached to and made a part of the petition. The smallest bill purchased on one date was $24.80 and the largest $700. The total aggregated $3,-395.45.

2. That at the times of purchase the defendant promised expressly and impliedly to make payment for the merchandise at the prices for which they were sold. The prices charged were alleged to be reasonable and that the goods were suitable for the purposes for which defendant expected to and did use them.

3. That defendant did not make payment as quickly as was contemplated by the parties and on October 1, 1932, the account, with accrued interest, amounted to $3,417.05. That the board of directors of defendant on September 24, 1932, at a regular meeting thereof, passed a resolution authorizing the president to execute the promissory note of defendant to plaintiff as of date October 1, 1932, for the amount due on account, which note was to mature six months after date, and to bear interest at the rate of 6 per cent. per annum. In conformity with the resolution, the note was executed, containing the usual and customary 10 per cent. attorneys' fee clause.

4. "That the articles purchased by defendant were for the purpose of constructing repairs, extensions and other improvements upon its right of way, plants or improvements, and were for the operation thereof and to defray ordinary maintenance and operation expenses, and it was contemplated that such debt or obligation was to be retired from current revenues and being for less than $25,000.00, said obligation or note issued therefor was based on adequate tax levies."

5. Allegations were made of the maturity of the note, failure to pay, and the placing of the note in the hands of an attorney for collection and the promise by plaintiff to pay the 10 per cent. provided for as compensation to its attorneys and the reasonableness of the fee.

Paragraphs 6 and 7 of the petition pertain to the delivery by defendant to plaintiff of certain bonds theretofore issued by it, and unsold, to secure the prompt payment of the indebtedness, and allegation is made that the bonds are worthless as security under the restrictions placed around their sale by law and the agreement under which they were delivered to plaintiff. They are tendered back to defendant in the pleadings. No exception is urged to these paragraphs and they need not be further mentioned.

8. Allegation is made that defendant is performing the usual and customary services for a county water improvement district, and has approximately 10,000 acres of land within the district, subject to assessment and taxation under the law, which

assessment and tax would more than pay plaintiff's debt, if the defendant would perform its duty as provided by law in such cases. That plaintiff was not attempting to enforce its rights with respect to said assessments and collection of such levy and taxes. Prayer was for judgment for the debt and for a writ of mandamus requiring defendant to perform its duty in levying and collecting assessments and taxes from which to procure funds to pay said debt and the judgment prayed for.

The first paragraph of defendant's answer consists of a general demurrer to plaintiff's petition. The second paragraph purports to be a special exception, but by its terms it is no more than a general demurrer.

A special exception was urged by defendant to paragraph 1 of the petition, upon the grounds that it was therein shown that defendant had attempted to incur an indebtedness to plaintiff without having first submitted the matter to a vote of the taxpaying voters within the district.

Further special exceptions were urged to paragraphs 1, 2, 3, and 4 of the petition, upon the grounds that the debt sued on was for improvements to and for the property of the defendant, attempted to be purchased by the board of directors, which, under provisions of article 7739, Rev.Civ. Statutes, requires that such obligations be made by the board of directors to the lowest responsible bidder after giving notice by advertising the same in one or more newspapers of general circulation in the state, one of which shall be in the county of Cameron, in the instant case. That the petition did not disclose that the law had been complied with in these respects.

The further special exception was urged to paragraph 3 of the petition for the reason the law does not authorize directors to execute notes for the obligations of the district and promise to pay attorneys' fees in case of default.

Another special exception was leveled at the whole of the petition for the reason it was not disclosed therein whether the items purchased by the directors were for the construction of the canal system and therefore chargeable to the construction fund, or whether they were such as were necessary for the maintenance of the system and therefore chargeable to the maintenance fund.

Yet another special exception was urged to the prayer in the petition wherein it is asked that the court issue its writ of mandamus against defendant requiring it to levy and collect the assessments and taxes due within the district, for the reason no such tax or levy may be made by defendant under the laws governing such cases except to discharge its bonds and interest thereon; that this, not being a suit on a bond or bonds of the district, the court would have no right to comply with the request contained in said prayer.

■ Not waiving its demurrer and exceptions, but subject to them all, the defendant filed an answer detailing what it considered a defense to any liability on the claims of plaintiff; but, since the exceptions were all sustained and the case dismissed, the defenses so pleaded become immaterial on this appeal. If any matters pleaded by defendant could be considered as an admission of liability or explanatory of matters alleged by plaintiff, they may be considered in connection with exceptions urged by the defendant. 33 Tex.Jur. p. 593, § 150, and cases there cited.

We therefore quote here one part of defendant's answer which sheds some light on the nature of the articles purchased by defendant from plaintiff and may be considered in connection with defendant's last special exception. A part of paragraph 18 of defendant's answer reads as follows: "This defendant now admits that the materials described in the exhibits attached to plaintiff's petition were received by it. That a portion of the canal system was partially, but inadequately constructed and the materials so purchased were temporary installments as culverts, syphons and gates, in a vain attempt to make certain of the lands within the district irrigable. * * *"

In arriving at whether or not the demurrer and exceptions to plaintiff's petition were properly sustained, we may consider that part of the answer above quoted in connection with plaintiff's allegations.

■ The rule of law is well settled in this state that, as against a general demurrer, the pleadings attacked must be taken as true. It is equally well settled that, in considering a special exception to a particular paragraph of a pleading, the court is not confined to the part complained of, for it is said in 33 Tex.Jur. p. 592, § 149: "The whole pleading may be examined to see if the averments in those parts are adequate and proper when

read in connection with what is elsewhere alleged."

The first four special exceptions presented by defendant were to the effect that plaintiff's petition disclosed the indebtedness sued on was one incurred by the directors of defendant for materials to be used in the improvements to and for its property. These exceptions were sustained by the court. We consider this the paramount issue in the case.

The Legislature provided for the incorporation of districts for water conservation and irrigation purposes; to do this, given territory is to be designated and a vote taken by the property taxpaying voters within the district, and, if a majority shall so express themselves favorably to the project, an organization shall be formed for the purpose of carrying it out. In the main, this organization is perfected by the selection of a board of directors with certain powers conferred upon them by the law, who shall manage and control the enterprise.

Article 7694, Rev.Civ.Statutes, provides that, after an election has been held for that purpose, resulting in favor of the issuance of bonds against the district, the directors may enter an order directing the issuance of bonds, sufficient in amount to pay for the proposed improvements to and for the district.

By article 7712, provisions are made for the directors to levy a tax against all property in the district sufficient to pay the interest on said bonds, together with a sufficient amount to create a sinking fund to redeem the bonds at maturity.

Article 7739 provides: "Contracts for making and constructing reservoirs, dams, canals, laterals, pumping plants, check gates, sluice gates, and all improvements whatsoever of said district shall be made by the directors, to the lowest responsible bidder, after giving notice by advertising same in one or more newspapers of general circulation in the State of Texas, and in one newspaper published in the county, if there be one in the county, and one newspaper in such district, if there be one in the irrigation district, which notice shall be published once a week for four consecutive weeks; and also by posting notices for at least twenty days in five public places in the district, and one at the courthouse door of the county or counties in which such district is situated."

Article 7740 provides for the furnishing to proposed bidders, copies of the engineers' report of the work to be done and profile of same. And article 7742 provides for the giving of a bond, by bidders, in such amount as the directors shall require, not to exceed the amount of the contract price. From a sale of the bonds above provided for, the expense of the improvements in the district must be paid.

By article 7714 there is a provision for the creation of a maintenance fund. This fund shall consist of all moneys collected by assessment or otherwise for the maintenance and operation of the properties belonging to the district.

Article 7652 reads as follows: "The board of directors herein provided for shall have control over and management of all the affairs of such district, shall make all contracts pertaining thereto, and shall employ all necessary employees for the proper handling and operating of such districts, and especially may employ a general manager * * * and such other laborers as may be required, and they may also buy all necessary work animals, motors, pumps, engines, boilers, machinery and supplies as may be required in the erection, operation and repair of the improvements of the district."

By article 7752 (as amended by Acts 1927, c. 90 [Vernon's Ann.Civ.St. art. 7752]) it is provided that the board of directors shall annually estimate the probable expense of maintenance of the district for the current year; that a part thereof not less than one-third nor more than two-thirds shall be paid by an assessment against the irrigable lands in the district, to be prorated by an equal amount against each acre. The remainder to be paid from charges made against persons within the district who actual contract to, and take water for irrigation purposes; a pro rata amount from each such person or persons to be collected, based upon the class of crop to be irrigated. The directors may, for the purposes set out, require each applicant for water privileges, to enter into a contract for the number of acres to be irrigated, showing the class of crops to be planted and cultivated thereon.

Plaintiff's petition, as disclosed by paragraph 4, as hereinabove quoted by us, shows, among other things, that the merchandise sold by it to defendant was for the purpose of "operation thereof (the

irrigation system) and to defray ordinary maintenance and operation expenses, and it was contemplated that such debt or ob-. ligation was to be retired from current revenues, * * * said obligation or note issued therefor was based on adequate tax levies."

That part of the answer of defendant above quoted, which we consider is favor-.able to the pleadings of plaintiff and may be considered in connection with plaintiff's petition, shows the goods were purchased ·and received by the defendant, and adds, "that a portion of the canal system was partially, but inadequately, constructed and the materials so purchased were temporary installments, as culverts, syphons and gates in a vain attempt to make certain of the lands within the district irrigable."

We think the pleadings were sufficient to entitle the plaintiff to introduce proof that the obligation incurred by defendant was for the maintenance of the irrigation system installed in the district. It cannot be said, as contended by defendant, that from the pleadings of plaintiff the indebtedness was incurred for the installment or extension of the system. In the absence of the contrary being shown, it will be presumed the directors had complied with the law in arranging the annual budget of necessary expenses for the maintenance of the district during the current year and had made adequate assessments against the lands in the district, as well as against those actually taking water for irrigation purposes, to enable them to defray current expenses. It will be noted allegation was made that the obligation was to be retired from current revenues.

It is admitted by defendant in its brief that: "We understand the law to be that a water improvement district * * * may purchase its ordinary supplies, payable out of cash on hand or current revenues, and if the subject of the contract to purchase is clearly a matter of ordinary expenditures, or if payable out of cash on hand, the price will not evidence a debt, even though it (the merchandise) may be delivered on 30, 60 or 90 days' time." But it is further contended by defendant that the obligation sued on is not for ordinary maintenance and operating expenses, but is a debt incurred without authority of law. It cites as authority for the contention, among others, the case of McNeill v. City of Waco, 89 Tex. 83, 33 S.W. 322, 324, by the Supreme Court. As we view the holding in that case and the former decisions cited therein, it does not support defendant's theory. It is there said: "We conclude that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation. City of Corpus Christi v. Woessner, 58 Tex. [462] 465; City of Terrell v. Dessaint, 71 Tex. 770, 9 S.W. 593," and other decisions from other jurisdictions. As stated, the petition of plaintiff shows this obligation was contracted at a time when it was contemplated it would be retired out of current revenues. The expression of the Supreme Court in the case cited and quoted from expressly excepts such obligations from the constitutional inhibition. We conclude that the trial court erred in sustaining the special exceptions based on these grounds.

The defendant specially excepted to that part of plaintiff's petition wherein it was alleged that the directors of the defendant district executed a note for the obligation. And further for the reason by such an obligation it could not bind the defendant to pay the 10 per cent. attorneys' fees provided for in the instrument. We can only agree with this contention in part; that is, we think, after the directors had legally incurred the obligation for the purposes set out, and it subsequently became apparent payment could not be made at the time the purchases were consummated, the directors could evidence the obligation by its written promise to pay and execute a note therefor under the order of the board, as was shown by the pleadings. In discussing the authority of municipalities to incur debts, distinguishing those authorized by law from those not so authorized, it is said in 30 Tex.Jur. p. 428, § 238: "A city may first purchase supplies and thereafter authorize the purchase and give approval to the transaction· by issuing a warrant for the amount of the purchase price." We do not believe, however, that, by a subsequent act authorizing the directors to execute a note for the previously valid obligation, the directors would be warranted in increasing the

amount of the indebtedness nor to obligate the district to pay the additional attorneys' fees provided for in the note as a penalty or otherwise. In fact the resolution of the board did not empower the president and secretary to incur the additional obligation of attorneys' fees. We hold that, in so far as the exception complained of the pleading in which the 10 per cent. attorneys' fees were asked, it should have been sustained. Tyler v. Shelby County, Texas (C. C.A.) 47 F.(2d) 103, and cases there cited.

█ The prayer in plaintiff's petition asking for a mandamus to require the assessment and collection of fees against land in the district for the purpose of raising funds to pay the current maintenance and operating expense of the district was fully justified, if recovery should be had by it. We have shown that by the provisions of article 7752 it is the duty of the directors to estimate the current expense for the year and to collect it from the landowners in the district in the manner and proportions therein set out; and it cannot be said that the directors could incur an obligation for the purpose of maintenance of the property, in contemplation of payment out of the current revenues to be collected by it, and then refuse to collect the funds to meet the obligation. It will be noted, however, that the prayer in·the petition asks for the writ of mandamus to require the collection of "taxes" as well .as assessments against the property in the district to raise revenues for the purpose of paying plaintiff's debt. If the writ is granted it should not require the collection of "taxes" for the purpose mentioned, since taxes can only be collected to pay interest and to create a sinking fund to retire the bonds when due.

Many interesting points have been raised by the respective briefs in this case, but in the view we have taken, as expressed herein, we find it unnecessary to express ourselves on them, other than as herein set out. Much is said by plaintiff about the morals involved when a corporate body receives the benefits of another's property and declines to make restitution, and its assertions, based on the premises shown, are supported by many well-considered opinions of our courts. Much emphasis is laid, by plaintiff, upon the proposition that, even if it was not entitled to recover upon the note, it was entitled to recover on quantum meruit, and the implied promise to pay the reasonable value of the merchandise sold. We do not think the pleadings of plaintiff will justify this conclusion. Upon another trial, if such an allegation should be made, in an alternative pleading, the proceedings heretofore had would not preclude the consideration of that point. But for plaintiff to rely upon this phase of the case may, of necessity, raise the question of limitation.

Upon the other hand, the defendant has defended, in its brief, by the equally well-supported contention that plaintiff could not contract with defendant in the face of the constitutional prohibitions to create debts and subsequently recover under the guise of valid obligations. We think all these extended arguments by both parties go beyond the questions before us for determination, and we find it unnecessary to discuss them.

█ The trial court, after having sustained the special exceptions of defendant, taking away every vestige of hope plaintiff may have had to present its claim for consideration by the court, clinched the situation by, lastly, sustaining defendant's general demurrer. In the nature of things the general demurrer, if presented at all, was before the court first, but the ruling thereon appears from the judgment to have been subsequent to the rulings on the special exceptions. If it was proper to sustain the general demurrer, then there was nothing before the court to be reached by the special exceptions. It is said in 33 Tex. Jur. p. 595, § 152: "Where as being demurred to as a whole, a pleading has been specially excepted to, no ruling will be made on the special exceptions, because that is unnecessary." This principle has been supported by the decisions of our courts for many years, as is disclosed by the authorities cited under the text quoted.

However, we need not comment further on this action of the court, since we believe the special exceptions were improperly sustained. It follows that, even though the general demurrer had been presented and acted upon in its due order, it should have been overruled.

For the errors pointed out, we must reverse the judgment of the trial court, and we therefore reverse and remand this cause for further proceedings hereon not inconsistent with these conclusions.

Reversed and remanded.