## FELTS v. WHITAKER.

### No. 13914.

Court of Civil Appeals of Texas.
Fort Worth.
May 19, 1939.

Rehearing Denied June 23, 1939.

Walter Miller, of Belton, and Hunter P. Lane, J. E. Warren, H. S. Lattimore, and John A. Scott, all of Fort Worth, for appellant.

A. B. Culbertson and M. Ward Bailey, both of Fort Worth, for appellee.

SPEER, Justice.

C. H. Whitaker sued G. M. Felts for breach of warranty in a deed to real estate, on charges that Felts had no title at the time of the conveyance; but that the real and paramount title stood in another.

It appears from the petition that on February 4th, 1927, the parties exchanged lands, estimating the value of each tract to be the same. Whitaker's property was situated in Tarrant County, and that of Felts in Bell County; the latter consisting of 34 acres of timber land, none of which was subject to cultivation. Each of the parties represented to the other that he had good and merchantable title, and executed a general warranty deed. That at the time

of said conveyances, Felts did not have title or possession, but that he had previously conveyed the Bell County property to Sam and William Townsend, by general warranty deed, on November 23rd, 1900, and that the Townsends then and there took possession of said land and have since that time been in possession of same. That plaintiff had no knowledge of said conveyance, and was an innocent purchaser for value. That said Townsends had said lands fenced, had used, cultivated and been in peaceable and adverse possession thereof under said deed, for more than ten years prior to the execution of the deed to plaintiff. Allegations were made of ouster of plaintiff by the Townsends and the breach of defendant's warranty. Prayer was for recovery of the purchase price paid.

Defendant Felts answered with general denial and special pleas, among which were, that the conveyance by him to the Townsends had not been placed of record at the time of his conveyance to Whitaker, and that the consideration in the Townsend deed had failed, and that he had rescinded same and repossessed the lands prior to the conveyance to Whitaker. Further answers were made that neither of the properties in Tarrant or Bell Counties, at the time of the exchange, had any such value as that alleged by plaintiff; that Whitaker had gone into possession of the Bell County property and voluntarily surrendered it to the Townsends, and therefore had suffered no ouster.

Trial was had to a jury on special issues. The verdict returned consisted of answers to issues as follows:

1. During the year of 1934, Whitaker, acting through one Barton, undertook to take possession of the Bell County land.

2. At the time Barton tried to take possession of the Bell County land, he was acting as the agent of Whitaker.

3. At the time Barton attempted to take possession of the land for Whitaker, Will Townsend refused to permit him to do so.

4. When Will Townsend refused to permit Barton to take possession of the land, he was acting as the duly authorized agent of Sam Townsend, one of the grantees in the deed from Felts in 1900.

5. There were delinquent taxes due and unpaid against the Fort Worth property at the time of the exchange between the parties in 1927.

6. The delinquent taxes against the Fort Worth property at the time of the exchange was $48.

7. The cash market value of the Bell County land, at the time of the conveyance to Whitaker, was $750.

The eighth issue and its answer read: "Do you find from a preponderance of the evidence that Sam Townsend and William Townsend, or either of them, or their duly authorized agents have had control and been using, occupying and enjoying the 34 acres of land in Bell County, Texas, since the execution of the deed by Felts to them in the year 1900? Answer 'yes' or 'no'." The issue was answered, "Yes."

No objections were made by either party to the issues submitted, nor were any requests made for additional issues. Whitaker moved for judgment on the verdict, and Felts moved for judgment non obstante veredicto. The latter was overruled and the former sustained. Judgment was entered for plaintiff for the value of the land in Bell County, with interest, less the taxes paid by Felts on the Tarrant County property. Motion for new trial was overruled, and Felts has appealed.

Parties will carry the same designation as in the trial court.

Defendant has presented this appeal upon the theory that his motion for judgment, disregarding the verdict, should have been sustained. This contention is based upon propositions to the effect, (a) that plaintiff could not recover for breach of warranty until he assumed the burden of proof and discharged it with a jury finding that the Townsend title was superior and paramount to that received by him from defendant in 1927, and that plaintiff had been ousted by virtue of that superior and paramount title; (b) that the evidence affirmatively shows that plaintiff was in possession of the Bell County land in 1934, and voluntarily surrendered it to the Townsends and therefore there was no eviction; and (c) that the only theory in the case upon which plaintiff could have recovered was to show that the Townsends held a superior title by virtue of limitations. But that the conditions under which they claimed title by prescription were insufficient in law or fact to support such claim, that that question was not submitted to the jury for determination, that plaintiff failed to request its submission, and therefore his only means of recovery was waived.

■■ Under those propositions, grouped by us in the first subdivision above, the defendant properly contends that the burden of proof was upon plaintiff to establish that at the time he took the conveyance from defendant there was a superior title to the Bell County land standing in another; that is, that defendant did not pass to plaintiff a good title, by which he could take possession of the land. 12 Tex. Jur., p. 88, sect. 58. It is undeniably true that prior to the date of the conveyance, defendant had deeded the Bell County property to the Townsends, in 1900. The Townsends had not placed their deed of record. Plaintiff alleged he was an innocent purchaser for value. It is contended by plaintiff, in his briefs, that it did not lie with defendant to urge upon the trial, that plaintiff was an innocent purchaser for value, when he had not alleged such in defense; that he could not defeat plaintiff's recovery for a breach of the warranty when he had admittedly conveyed the land to another prior to his conveyance to plaintiff. There was no necessity for such plea by defendant when plaintiff had plead that, as a fact, in his petition. Western Metal Mfg. Co. v. Cameron, County Water Imp. Dist., Tex.Civ.App., 105 S.W.2d 700, writ dismissed; 33 Tex. Jur., p. 593, sect. 150, and cases there cited.

■ It cannot be said that the Townsends held a superior title to that acquired by plaintiff, solely because they held a deed of conveyance from Felts, executed in 1900. That deed was not of record and plaintiff knew nothing about it. To be effective as against plaintiff's title, acquired in 1927, that deed must have been recorded prior to that time, or other actual notice thereof had by plaintiff. Article 6627, R.C.S.

■■ It follows, then, that such superior title as the Townsends may have had was dependent upon prescription. Such a title in Townsend was plead by plaintiff, and he assumed the burden of establishing as a fact that it was true. It was plaintiff's further burden to prove that he had been ousted from possession by those who held the paramount title. It is no longer necessary to prove an actual physical eviction before a recovery can be had for a breach of warranty. If there is an outstanding superior title to real estate, to the one attempted to be passed by a conveyance, and the instrument contains a warranty of the title, the breach of warranty is complete and the cause of action arises at the time of the conveyance and warranty, and the complaining party may have his action therefor as soon thereafter as he discovers, or by diligence should have discovered, the deception. Westrope v. Chambers' Estate, 51 Tex. 178, 187; Jones' Heirs v. Paul's Heirs, 59 Tex. 41; Atler v. Erskine, 50 Tex.Civ.App. 576, 111 S.W. 186, writ refused; Compton v. Trico Oil Co., Tex.Civ.App., 120 S.W.2d 534, writ refused.

■■ The defendant plead by his answer in this case that plaintiff had not been evicted from the premises described in the deed and that he could not recover in this suit until he had been ejected and dispossessed by another claiming under a superior and paramount title. This seems to have been the early holdings of our courts, but for many years now that rule has been relaxed to the extent that when one who takes under a deed attempts to take possession of the property so purchased and finds another claiming under a superior title to his, and the latter denies him the right of possession, and threatens enforcement of his rights through the courts or by pursuing other legal methods, such purchaser may, if the outstanding title be superior to his own, resort to his remedy of suit for breach of warranty. In doing so, however, he assumes the responsibility of that other title being paramount to the one taken by him from his grantor. The warranty of the grantor is against the lawful claims of all other persons, and if they should prove to be unlawful claims, it must follow that if grantee has chosen to let them prevail under the assumption that they are lawful, he has no action against his warrantor. Rancho Bonito Land & Live-Stock Co. v. North, 92 Tex. 72, 45 S.W. 994. In the last cited case it was said, 92 Tex. 72, 45 S.W. at page 996: "The warranty in former times could only be broken by an actual eviction from the possession, but in modern times the rule has been so far relaxed that an eviction in legal contemplation occurs when the facts are such that it would be useless for the covenantee to attempt to maintain the title conveyed him, e. g. where the holder of the superior title has taken actual possession or threatens suit. If in such cases he yields to a force he cannot resist, he is, in contemplation of law, evicted." The case from which the quotation is taken

has been recently followed in Love v. Minerva Petroleum Corp., Tex.Civ.App., 105 S.W.2d 892, wherein other authorities are cited.

■■ It is not incumbent upon a warrantee to fight in court or otherwise, a force he cannot resist or to make a hopeless contest of another's right to title before he can maintain his action for breach of warranty; but he must assume the responsibility of the superiority of the other claim to his own when he voluntarily yields to it. In Clark v. Mumford, 62 Tex. 531, at page 535, this is said: "And not withstanding a covenant of warranty is not broken until eviction by paramount title, still eviction by judgment at law is not essential to establish the breach; the covenantee may yield to the paramount title and give possession, or else buy his peace and claim for breach of the covenant. But in case he does either, the burden is upon him, in a suit against his warrantor, to establish that the title to which he thus yielded was the superior and better title." In Westrope v. Chambers' Estate, supra, the Supreme Court held that where a warrantee yielded to what he believed to be a superior title and sued his warrantor for breach the former did so at his peril, and must assume the responsibility of determining upon the chances of success; that he must, under such conditions, when suing his warrantor, assume the burden of proving that the title to which he has yielded is superior to his own. To the same effect are Johns v. Hardin, 81 Tex. 37, 16 S.W. 623; Norton v. Schmucker, 83 Tex. 212, 18 S.W. 720. There is ample evidence to support the verdict of the jury that when plaintiff sent his agent, Barton, in 1934, to take possession of the Bell County land, to cut timbers therefrom and clear up certain parts of it, that Townsend, the authorized agent of Sam Townsend, forbade him taking possession and clearing the land; that plaintiff yielded to that title asserted by Townsend, upon the theory that it was superior and paramount to his own. We therefore overrule defendant's assigned errors that he should have had judgment entered in his favor, notwithstanding the verdict, because plaintiff had not proven eviction.

This brings us to a consideration of defendant's contention based on assigned errors, that the title of the Townsends to which plaintiff yielded was not shown by the evidence, nor found by the jury, to be superior and paramount by the statute of ten years' limitation.

Under the authorities cited, there can be no question but that the burden of proof rested with plaintiff to prove and procure a jury finding that the Townsend title was superior and paramount to the one received under his deed from defendant. That title was not superior by virtue of the Felts deed to the Townsends, in 1900, for regardless of the validity of that conveyance as between Felts and his grantees, it was not of record, nor did plaintiff have any knowledge of its existence; he was an innocent purchaser, insofar as the deed was concerned, and Townsend's title under that deed would be inferior to that taken by plaintiff. The strength of the outstanding title to which plaintiff yielded was dependent upon limitations having ripened it in the Townsends.

Plaintiff attempted to prove the outstanding prescription title by Will Townsend, a nephew of the grantees in the 1900 conveyance; this witness showed himself to be the agent and representative of his uncles, who were grantees in the old deed mentioned. The most favorable aspect that can be given to his testimony is in effect that since about 1906 he had attended to the business of those grantees; that the land in controversy was rough, timbered land, suitable only for wood and pasture purposes; that when his uncles bought 172 acres of prairie lands from defendant Felts, they also got this 34 acre tract, at which time one of his uncles paid Mr. Felts $100 for it. That the tract had no fence around it, but was enclosed with something over 360 acres belonging to other parties; through an agreement with the owners of those other enclosed lands, he had turned his livestock into the enclosure for pasturage purposes. He paid taxes on all the lands of his uncles since 1906; they had other lands in the survey in which this tract was located, and that he paid taxes on 34 acres more than was shown by the two deeds to be located in that survey; on cross examination he said he did not know whether he rendered the 34 acres of land for taxes or not; that he had sometimes got wood from the land to be used at his home on the prairie; it depended on the kind of wood he wanted as to where he got it. This witness further testified about the occasion when a Mr. Barton attempted to cut some wood on the land in 1934.

(This is the man whom plaintiff sent there to take possession and cut the wood). He said he told Barton his uncles owned the land and that no one else had any right on it and that he represented his uncles and that he demanded of Barton to leave the premises; that Barton did leave and did not return. He testified that after this occurrence he looked up the old deed from Felts to his uncles and found that it was not recorded and then took it to the county seat and had it recorded (in 1934). He said that he, along with others similarly situated, rather considered the pasture which contained this 34 acres, as kind of free grass.

We do not think the evidence in this case, considered in its most favorable light to plaintiff, is of such a nature as to show that the Townsends and their heirs and representatives acquired a superior and paramount title to that of plaintiff. The control, use and enjoyment of the land by the Townsends, as disclosed by the record, was not open, notorious, exclusive or necessarily adverse to any one, especially the real owner. These elements were essential in ripening a title by limitation in the Townsends as against plaintiff. The use made by the Townsends of this property, as shown by the evidence, was similar in many respects to that of others who likewise pastured the several tracts in the large enclosure, where it appears they considered it "free grass".

Article 5510, R.C.S., upon which plaintiff relies, insofar as applicable here, reads: "Any person who has the right of action for the recovery of lands * * * against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward. * * *"

Insofar as the foregoing article refers to adverse possession, article 5515, R.C.S., is applicable here. It reads: "'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

It was held in Patrucio v. Selkirk et al. Tex.Civ.App., 160 S.W. 635, 637, writ refused, that proof that claimant pastured his stock on a tract of 414 acres, in which he claimed 100 acres, while other owners likewise pastured the whole tract, was not such a use and occupancy as would support the plea of three, five or ten years' limitation.

In Mason v. Stapper, Tex.Sup., 8 S.W. 598, it was held that the commencement to build a fence on the disputed premises before suit was instituted, and that claimant herded his sheep on the land from time to time, were not sufficient to support the claim of title by prescription.

In the case of Walker v. Maynard, Tex. Civ.App., 31 S.W.2d 168, the sufficiency of the evidence to support possession and the other elements of the ten years' statute of limitation was involved. The claimant in that case sought to establish his title to 150 acres included in a large enclosure of over 800 acres. He pastured his cattle in the enclosure, where he said others did the same thing. Court said, 31 S.W.2d at page 170: "In order to hold land by constructive possession, the party claiming it must be in possession of a part of the land; and the mere running of stock upon an open range in common with others is not such possession as will sustain title by limitation."

West Production Co. v. Kahanek, Tex. Com.App., 121 S.W.2d 328, involved the sufficiency of evidence to support a plea of the ten years' statute of limitation. Claimant, with permission of the owner of a large enclosure, pastured her cattle on an 80 acre tract, and the subsequent owners of the large pasture built a fence adjacent to 160 acres which included the 80 acres in controversy, so as to exclude the 160 acres from the large pasture. Claimant continued to pasture the 160 acres and eventually claimed a certain 80 acres of that tract as having acquired it by limitation. Court held that the pasturing of cattle thereon, and the maintaining of the fence built by another, did not constitute such open and notorious adverse possession as would ripen the title by prescription in the claimant. Case of Schaeffer v. Williams, Tex.Civ.App., 208 S.W. 220, writ refused, is there cited in support of the holding.

A similar rule is announced and many authorities collated in 2 Tex.Jur., pages 108 and 109, sect. 57. It is there said: "Possession of premises usually carries with it the presumption of a claim of title, and in that sense operates as notice to the true owner that his title is disputed. It must be made to appear that the claimant's possession was so open and notorious as to

afford ground for a presumption of knowledge or notice. In order to excite inquiry, the possession must be open, exclusive and visible."

We do not mean to be understood as holding that title to unfenced and unimproved land cannot be acquired by limitation, but certainly the acts which are relied upon to thus acquire title must be such as are open, notorious and even inconsistent with a similar claim that may be made by other persons who enjoy in common the same privileges of use, as claimant.

While our statutes concerning limitation of ten years do not provide in so many words that one claiming title thereunder must have asserted a "claim" of title and ownership during the period of prescription, there must be such evident acts upon the part of the claimant as will put all persons upon notice that he in fact has appropriated the land and is exercising such control as will eventually ripen his prescription title. In this connection it was said by our Supreme Court in Smith v. Jones, 103 Tex. 632, 132 S.W. 469, 472, 31 L.R.A.,N.S., 153: "It is therefore true that a 'claim,' to satisfy the statute, may be only such as is involved in a mere maintenance of possession of, and the exercise of dominion over, the land, provided there be present the attitude of hostility and exclusiveness towards the true owner."

This point has been further emphasized by what was said in Foster v. Persinger, Tex.Civ.App., 30 S.W.2d 378, writ refused. At page 380, the court announced three requisites necessary to show prescription title, in this language: "In order to acquire title by limitation under the ten-year statute * * * a claimant must prove by a preponderance of the evidence (1) possession of the land, (2) cultivation, use, or enjoyment thereof, and (3) an adverse or hostile claim thereto."

See, also, Overton Refining Co. v. Harmon, Tex.Civ.App., 81 S.W.2d 207; affirmed, 110 S.W.2d 555. The holding in the last cited case finds support by reading together Articles 5510, 5514 and 5515, R.C.S.

Under the authorities mentioned above, the evidence relied upon by plaintiff to show that there was an outstanding superior title by limitation in the Townsends would not have supported an affirmative verdict to that effect, even if the issue on that point had been properly framed and submitted. The ultimate and only decisive issue in this case, as we view it,

was whether or not the Townsends had acquired a limitation title to the land, which was superior and paramount to that acquired by plaintiff by his deed in 1927. The strength of the title to which plaintiff yielded depended upon its perfection, under the ten years' statute of limitation. The requisites of that statute were not covered in special issue No. 8, copied above. By that issue and its answer nothing was found except that the Townsends, through their agent, had controlled, used, occupied and enjoyed the land since 1900. The answer to that issue did not determine, even remotely, whether the use and control of the Townsends embraced the peaceable and adverse possession of the land. "Peaceable possession" is such as is continuous and not interrupted. (Art. 5514, R.C.S.). "Adverse possession" means an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. (Art. 5515, R.C.S.)

Reverting to the evidence adduced, we recall that Will Townsend, the representative of his uncles, said that they all considered the pasture lands in this large enclosure furnished a kind of free grass. It is evident that others, like Townsend, also pastured the land. This being true, Townsend's use and enjoyment of that land was not shown to have been either hostile or adverse to any one. There is nothing in the evidence to show a special claim of right to him not vouchsafed to others who did the same thing. Nor did the answer to the issue indicate more than that he had had control of it and had used and enjoyed it. The length of time that this condition existed is not found in the answer unless it can be said that it had continued at all times since 1900. But what does the expression "since 1900" mean? Does it mean that that condition existed continuously since that date? Does it mean that the condition existed continuously at least for a period of ten years? Or does it mean that Townsend had controlled, used and enjoyed the land at some time since 1900? The phrase of the charge is clearly ambiguous, and susceptible, by a liberal interpretation to either construction.

The burden was on plaintiff in this case to show and have a jury finding that the Townsend title was superior to his own. He made no objection to the submission of Special Issue No. 8, in the form presented, nor did he request the giving of a proper one. This was the sole point upon

which he could recover. By Article 2185, R.C.S., it is provided that when the charge of the court has been prepared it shall be submitted to the respective parties or their attorneys for inspection and objections by them, if they desire to make such. It is further provided that if no objections to the charge are made to the court, they are waived.

■ It has many times been held by our courts that the failure of a party to object to the charge of the court which improperly submits an ultimate issue, or when such ultimate issue is not submitted in any form and ·the party makes no request for its submission, he thereby waives the point. If, then, plaintiff waived the only theory upon which he could recover, it follows that he should not have recovered and a verdict and judgment in his favor have no support in the record. It is equivalent to a recovery on something not plead or proved; he had waived or abandoned it. The ultimate and controlling issue in the case will not be presumed to have been found by the court in such way as to support the judgment under Article 2190, Vernon's Tex.Civ.St. The last mentioned article is applicable only to supplemental, incidental and ancillary issues to the main, controlling or ultimate issue. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084. Many more such cases could be cited, including Panhandle & S. F. Ry. Co. v. Friend, Tex.Civ.App., 91 S.W.2d 922, and Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031. This court, speaking through Chief Justice Dunklin, had occasion to discuss the effect of the rule above announced in the case of Carlton v. Adams, Tex.Civ.App., 54 S.W.2d 1073, writ of error refused. In that case it was held that a failure to object to improperly submitted ultimate issues or to request proper ones when none had been prepared by the court, was an effective waiving of a right of recovery on that issue.

■ From what has been said, we have concluded that the only theory upon which plaintiff in this case could have recovered was waived by him; furthermore, that even if the issue had been properly submitted, including all the elements of limitation covered by Article 5510, R.C.S., there was no evidence of a substantial nature offered to have supported an affirmative answer by the jury. In addition to the authorities above mentioned, we are

supported in this by Paris Grocery Co. v. Burks, 101 Tex. 106, 105 S.W. 174; Jackson v. De Guerin, 124 Tex. 424, 77 S.W.2d 1041.

■ The motion for judgment non obstante veredicto, made by defendant, should have been sustained by the trial court. We have searched the evidence diligently to ascertain if perchance the facts had not been fully developed, and find nothing suggested that was improperly excluded by the court. From the whole record we can conceive of no theory upon which plaintiff could recover in this action as plead and made. These things make it obvious that no good purpose could be served by reversing and remanding the cause for another trial. It therefore becomes our duty to reverse· the judgment of the trial court and render judgment for defendant, as the trial court should have done. Judgment is reversed and here rendered for defendant.

### On Motion for Rehearing.

In plaintiff's motion for rehearing he challenges an expression used· by us in the original opinion, wherein we undertook to· give a brief résumé of his pleadings and said: "That at the time of said conveyance (from defendant to plaintiff,. sought to be cancelled) Felts did not have· title or possession, but he had previously conveyed the Bell County property to Sam and William Townsend, by general warranty deed, on November 23rd, 1900, and that the Townsends then and there ·took possession of said land and have since that time been in possession of same. That plaintiff had no knowledge of said conveyance, and was an innocent purchaser for value."

Plaintiff contends that he did not allege that "he was an innocent purchaser for value." He in fact did not use those words in the amended pleading upon which the case was tried. His language in this respect was: "Plaintiff alleges and shows to· the court that at the time the said deed (from defendant to plaintiff) was executed and delivered to him, and the consideration paid, that superior and paramount title to said land was and had been, for nearly thirty-five years, in William Townsend and Samuel Townsend, the said defendant having conveyed the said land to said William Townsend and Samuel Townsend by his. warranty deed, duly executed on the 23rd day of November, A. D. 1900, which deed now appears of record in Vol. 431, page·

194, Records of Deeds of Bell County, Texas * * *.

"Plaintiff respectfully shows that he had no knowledge or notice of such superior and paramount title at the time of the execution and delivery of said deed * * *."

The undisputed evidence showed that these allegations were true. The Townsend deed was not of record and plaintiff had no knowledge, either actual or constructive, of its existence, and that he paid a valuable consideration for the conveyance by defendant. From all this we summarized the allegations by saying plaintiff alleged that he "was an innocent purchaser for value."

The terms, "innocent purchaser for value", and "bona fide purchaser", are synonymous. The expressions are used interchangeably and mean the same thing, insofar as this case is concerned. A bona fide purchaser, as described in 43 Tex.Jur., p. 620, sect. 365, is "one who buys real estate in good faith, for a valuable consideration, and without actual or constructive notice of an outstanding equity or an adverse interest or title." See, also, the many authorities cited by that text.

We abbreviated the allegations in the interest of time and space. We think we did no violence to plaintiff's allegations, since they alleged all the elements embraced within the meaning of innocent purchaser. Plaintiff has dwelt at length upon this point in his motion, and we feel that in fairness to his contention, this much should be said.

Plaintiff insists that we have viewed this appeal from an erroneous conception of the real merits of his case, in that we have held the outstanding deed to the Townsends, which was not recorded and of which he had no knowledge or notice, would not defeat his title taken from defendant at the time of the conveyance to him, but that if he could recover at all it must be upon proof and a finding that defendant's title had been taken away by limitation prior to the time they made their trade. He says, in fact, the prescription title has no place in the case and the submission of that issue to the jury was unimportant, and therefore the manner in which it was submitted was immaterial. With this we cannot agree. In addition to the reasons set out in our original opinion as to why that issue was improperly prepared and submitted, this further reason is apparent. The conveyance from defendant to plaintiff was made on February 4th, 1927; the case was tried on March 7th, 1938. The inquiry made by the issue was, had the Townsends controlled, used, occupied and enjoyed the Bell County land since 1900? The form of the inquiry covered all time up to the date of the trial. The answer was in the affirmative. This answer could have been true, and the period of occupancy could have been more than ten years, even though it had continued only since the date of the conveyance on February 4th, 1927, to the date of the trial. Such an adverse possession would not, in any event, have been chargeable to defendant.

We have carefully studied all the assignments of error presented by plaintiff in his motion, and believe they are without merit. With these explanations, we believe the motion should be overruled, and it is so ordered.