Spurgeon E. Bell, State's Atty., of Austin, for the State.

GRAVES, Judge.

Appellant was charged by complaint with the possession of illicit liquor, that is, unstamped intoxicating liquor, and was by the jury sentenced to pay a fine of $100.

There are numerous bills of exception in the record, none of which we think reflect serious error save bill No. 3. In that bill, the appellant, while on the stand, offered certain testimony relative to what took place at the time of his arrest by the constable, which testimony it was claimed, if true, would have shown animus and ill-will upon the part of the officer arresting him, and who was also the principal witness in the case relative to the transaction complained about. We not only think appellant should have been allowed to testify relative to such matter himself, but should also have been allowed to question the officer as to whether such transactions occurred which would have had bearing on the question of animus or ill-will of this witness. Neither of these privileges was allowed appellant by the trial judge, and we think the same was error. Other matters complained of by appellant will doubtless not again occur. The trial court was correct in not allowing appellant to bring in defensive testimony under the guise and doctrine of surprise by hearsay from his own witness by means of an effort to impeach such witness by showing that previous to said trial the witness had informed appellant's attorney that such facts were true, the truth of which he denied while on the stand, and had refused to testify to such defensive matter.

For the error discussed the judgment is reversed and the cause remanded.

## BECK v. KOURI et al.
### No. 14311.

Court of Civil Appeals of Texas.
Fort Worth.
Dec. 12, 1941.

Rehearing Denied Jan. 16, 1942.

76

Walter E. Jones, of Longview, for appellant.

Elmer H. Parish, of Wichita Falls, Frank R. Graves, of Fort Worth, and John W. Ford, of Kilgore, for appellees.

SPEER, Justice.

Plaintiff, A. D. Beck, sued defendants, A. P. Kouri, Joe Manziel and Frank R. Graves, for damages. His alleged cause of action against all defendants except Graves was for the breach of a warranty in conveyances of real estate, and against Graves for fraud, deceit and malicious connivance with the other named defendants relating to the examination of abstract and passing of title to the lands attempted to be conveyed.

Plaintiff's pleadings are lengthy, and in so far as we can tell, trial was had upon a combination of a second and third amended petition. While the latter bears the word "Supplemental" immediately following the style and caption, it recites all the necessary requisites of an amendment. Its terms are in form of an alternative plea only, yet it is stated therein that the pleader relies upon all of the matters set out in the second amended petition, in addition to the alternative pleading in the third amendment. No complaint is made of the form in which the pleadings were presented, and in view of the disposition we have concluded to make of this appeal, it is unnecessary for us to give that matter further attention; but we are not to be understood as lending approval to the procedure apparently followed by the trial below.

In so far as is necessary here to state the nature of plaintiff's complaints, it may be said that, prior to June, 1931, plaintiff Beck, Graves and Thompson were partners in buying and selling oil leases and mineral rights in the East Texas oil fields. Beck was the field man to find attractive deals, Graves, an attorney, was to attend to all legal phases, and Thompson was to advance necessary funds. Beck and Graves were to reimburse Thompson to the extent of their respective interests.

At about the same time and place, defendants Kouri and Manziel were engaged in a similar line of business; that on May 16th, 1931, Kouri, acting for his partnership, contracted to convey to Beck, for the use of his partnership, an oil and gas lease and one-half royalty interest in 13¼ acres of land in Gregg County, Texas. On about June 12th, 1931, the written conveyance was made to plaintiff. That by the terms of

the conveyance grantors warranted the title thereto, and in consideration for the purchase, plaintiff, for his partnership, paid $3,600. That the sellers had no title to the property sold.

Plaintiff further alleged that defendant Graves, the member of his partnership whose duty it was to investigate titles and advise plaintiff, fraudulently and maliciously failed to honestly perform that duty, and by divers means falsely represented ·to plaintiff the condition of the title and thereby prevented plaintiff from discovering the true condition thereof until about October 6th, 1940, when he learned for the first time that he received no title by said conveyances and that he had no information prior to that time by which he could have known that the warranty of grantors had been breached.

Prayer was for $3,600 and interest thereon for the purchase money paid, $17,650 for loss of profits on the deal, and $20,000 on account of loss of his health, loss of financial ability to carry on his business, and suffering of himself and family because of the conduct of all said defendants, and further for $20,000 exemplary damages, based upon the fraudulent and malicious acts of each and all defendants in connection with said transaction.

All defendants answered by general demurrers, many special exceptions, general denials and by special pleas of two and four years' statutes of limitations. They further pleaded certain facts which, if established, would support their respective pleas of limitation.

Trial was to the court. Judgment was entered that plaintiff take nothing and that defendants recover their costs. From this judgment, plaintiff has appealed.

No statement of facts is before us, but the court has prepared and filed a complete finding of facts and conclusions of law. Plaintiff (appellant) makes no complaint at the facts found but attacks the court's conclusions of law. The merits of this appeal rest upon these contentions.

Paragraphs 1 to 7 of the fact findings indicate that there was evidence to support plaintiff's allegations of the existence of the two partnerships engaged in the business above indicated; that in June of 1931, defendant Kouri's firm sold to plaintiff's firm the lease and royalty interest as alleged, for $3,600, and received that amount of money from plaintiff. Subsequent findings are substantially as follows: (8) One Godlock, as a matter of fact, owned the leasehold and royalty interest attempted to be sold by Kouri's firm to plaintiff's firm, and that the warranty of title by Kouri to plaintiff failed. (10) Defendant Graves did not defraud plaintiff nor did he conspire with either of the other defendants to defraud plaintiff, but that all facts concerning the whole transaction were fully discussed between Graves and plaintiff. (11) Shortly after the deal was consummated, plaintiff and Graves went upon the survey out of which the tract in controversy was taken, and talked with people in that vicinity about the location of the 13¼ acres; no one was living on the premises at that time and that no oil developments were then in progress and that none has since been had thereon. (12) Plaintiff and Graves visited a firm in Tyler, Texas, and were informed by a member that they owned the lease and royalty and showed plaintiff and Graves their abstract of title thereto, containing the instruments covering the title; plaintiff and Graves there learned that the abstract furnished to them by Kouri was incomplete, having omitted from ·it ten instruments which showed title in the Tyler firm. Plaintiff and Graves then went to the company that made their abstract and inquired about the error, and then demanded the return of the purchase money from Kouri, but it was refused. (13) In June, 1931, Graves filed complaints in the justice court against Kouri for his acts in making the conveyance and for procuring the purchase money when he owned no title; that Graves subsequently appeared before the grand jury of Gregg County and endeavored to have indictments returned against Kouri for his said acts; that plaintiff knew of all the acts of said Graves in his efforts to have Kouri indicted for swindling in connection with the failure of the title. (14) Kouri and Manziel did not know the abstract furnished to plaintiff did not contain all the conveyances affecting the title. (15) Immediately after the conveyances in question were made on June 12th, 1931, plaintiff and Graves learned of the paramount title being in the Tyler firm and that they were asserting their title as against every one, including plaintiff and his two partners, Graves and Thompson. (17) The Tyler firm asserted title to the property in their conversations with plaintiff and Graves in 1931, and that plaintiff, Graves and Thompson surrendered the property and abandoned all rights and interest in said property at that time; and (18) more than

four years elapsed after said surrender and abandonment of the title by plaintiff, and his eviction therefrom by the Tyler firm, and the institution of this suit.

Upon the facts found, the court concluded as a matter of law, (2) that Beck (plaintiff), Graves and Thompson had notice of the defect in their title in June, 1931, and that the title was in another, and that the statute of limitations began to run at that time. (3) That the knowledge obtained by plaintiff and Graves in June, 1931, and their surrender of the property to the Tyler firm and abandonment of all further rights and claims therein was in law an eviction of plaintiff and his firm from the premises, and in paragraph five a similar conclusion is stated and the date of the eviction is found to have taken place in June, 1931, and that limitations barred plaintiff from a recovery prior to the date of the institution of this suit in October, 1940.

First point presented by plaintiff for a reversal of the judgment is in substance that the mere fact plaintiff was advised by another in 1931 that such other person claimed the title did not amount to an eviction and therefore limitation did not begin to run against his cause of action at that time. The point asserted does not embrace the further finding of facts by the court that plaintiff, at that time, surrendered the title to the one claiming it, and then and there abandoned all further right, title and interest therein. It is difficult to perceive of a situation which would present a more definite eviction, and even an acquiescence therein by plaintiff. The finding of facts in this case is analogous to a jury verdict on the question involved; plaintiff does not question the facts found by the court, and they must be held to be true. 41 Tex.Jur., § 399, p. 1274; 3 Tex.Jur., § 771, p. 1102; Corn v. First Texas Joint Stock Land Bank of Houston, Tex.Civ.App., 131 S.W.2d 752, writ refused.

The trial court found as a fact, as well as of law, that the assertion of title and the evidence thereof presented by the Tyler firm to plaintiff and the abandonment by plaintiff and his relinquishing all right, title and claim to the apparent title holders, amounted to an eviction of plaintiff, and that his cause of action for breach of warranty by grantors arose at that time. In this we think the court was correct. It is no longer necessary under our decisions for an actual physical eviction to entitle a warrantee to maintain his action. But if a paramount title is asserted by another and the one claiming under a different chain surrenders his title to the paramount owner, he does so at his own risk of the other being superior to his own. If in fact the title of his adversary is superior to his, he has his action for breach of warranty. In any event, there must be an eviction, either actual or constructive, before action on the warranty can prevail. Rancho Bonito Land & Live-Stock Co. v. North, 92 Tex. 72, 45 S.W. 994; Felts v. Whitaker, Tex.Civ.App., 129 S.W.2d 682, affirmed by Supreme Court, 155 S.W.2d 604. It is apparent from the record before us that no other form of eviction of plaintiff from the premises than that found by the court ever occurred. And unless plaintiff was in law evicted under the circumstances found by the trial court, he could not recover in this suit at all. If his eviction was in 1931, as found by the court, his action was, under the facts found, barred when he instituted this suit.

Second point raised complains of the refusal by the trial court to permit the paramount title holders to intervene in the suit. We see no error in this, for the reasons, (1) this was not an action for the recovery of the land, but for damages for a breach of the warranty to plaintiff, by a stranger to the title. The paramount owners' title was not involved and no judgment entered in the case would place a cloud thereon. And (2) the court found that the proposed intervener did not appear to present his application for intervention, nor is he complaining here because it was not allowed, but plaintiff alone is complaining; his right of recovery in the suit was not affected in any way by the court's refusal to permit the true owner to intervene.

Third point complained of is because the court found that Graves was not liable to plaintiff in damages on account of alleged fraudulent acts on the part of Graves, and connivance with Kouri and Manziel in deceiving plaintiff, with respect to the title. The court very definitely found that none of the alleged facts existed, and under the above authorities plaintiff is bound by those findings.

The record before us clearly supports the holding of the trial court that plaintiff's cause of action was barred by limitation. All points presented are overruled, and the judgment of the trial court is affirmed.